**LIBERTY MUTUAL INSURANCE COMPANY, Appellant/Cross–Appellee–Defendant,**

v.

**OSI INDUSTRIES, INC., and Beltec International, Appellees/Cross–Appellants–Plaintiffs.**

No. 49A02–0405–CV–449.

Court of Appeals of Indiana.

July 21, 2005.

Steven B. Belgrade, John A. O'Donnell, Belgrade & O'Donnell, P.C., Chicago, IL, David L. Taylor, Jennings Taylor Wheeler & Boukamp, P.C., Carmel, for Appellant.

John W. Roberts, Barack Ferrazzano Kirschbaum Perlman & Nagelberg, LLC, Chicago, IL, Robert B. Clemens, George T. Patton, Jr., Beth L. Riga, Bose McKinney & Evans LLP, Indianapolis, for Appellees.

## OPINION

VAIDIK, Judge.

### Case Summary

Liberty Mutual Insurance Company ("Liberty Mutual") appeals from the grant of summary judgment in favor of OSI Industries, Inc., ("OSI") and Beltec International ("Beltec") in their declaratory judgment action alleging that Liberty Mutual breached its duty to defend OSI and Beltec in an underlying lawsuit. OSI cross-appeals the trial court's order that Liberty Mutual pay only half of OSI's legal fees and expenses because OSI was insured by another insurance company. We affirm the grant of summary judgment in favor of OSI and Beltec and in so doing conclude that Liberty Mutual had a duty to defend them in the underlying lawsuit. We also conclude that Liberty Mutual has waived, for failure to make a cogent argument, its argument that OSI and Beltec are precluded from coverage for the underlying complaint's two counts of willful violations of penal statutes; moreover, such argument fails on the merits because other counts in the complaint were for causes of action that would have been covered by the insurance policy, and the duty to defend is broader than the duty to indemnify. On the issue of Liberty Mutual's liability for defense costs prior to the date that OSI and Beltec gave notice of the underlying lawsuit to Liberty Mutual, we find that the trial court erred in awarding these costs. Moreover, we find that public policy does not prevent OSI's and Beltec's recovery against Liberty Mutual and that the pleadings in the underlying lawsuit did not clearly exclude the finding that the events for which OSI sought coverage occurred before OSI's policy had expired with Liberty Mutual. We reverse the trial court's award of OSI's and Beltec's attorneys' fees in the declaratory judgment action because Indiana adheres to the "American Rule"

for the allocation of attorneys' fees. We affirm the trial court's award to OSI of 50% of its Thermodyne litigation legal fees and expenses from Liberty Mutual because OSI has been partially compensated for those costs by another insurance company.

### Facts and Procedural History [1]

OSI is a company that processes meat and is the exclusive provider of meat products for McDonald's Corporation ("McDonald's").[2] Beltec developed and licensed the "Temperfect Oven" for manufacture by Taylor Manufacturing ("Taylor"), a food equipment manufacturer. The "Temperfect Oven" was sold for use by fast food restaurants and contained flat, solid aluminum plate shelving for the cooking and holding of food items.

In 1995, OSI, Beltec, and McDonald's, among others, were sued by Thermodyne and AFTEC (collectively "Thermodyne").[3] Thermodyne, an Indiana corporation with its principal place of business in Fort Wayne, developed, manufactured, and sold the "Thermodyne Oven" to fast food restaurants beginning in May 1987. The oven contained flat, solid aluminum plate shelving, which Thermodyne claimed was unique and a trade secret. The amended complaint reveals the following eight counts: (I) Illinois Consumer Fraud and Deceptive Business Practices Act...; (II)

Illinois Trade Secrets Act...; (III) Unfair Competition; (IV) Breach of Confidence; (V) Interference with Contractual Relations; (VI) Breach of Fiduciary Duty; (VII) Breach of Contract; and (VIII) Conspiracy. Appellant's App. p. 387–93.

Benno Liebermann, the founder of Beltec, worked for Thermodyne at one time and served as its Vice President of Engineering and Senior Vice President of Science and Technology. According to Thermodyne, Liebermann secretly met with OSI, and OSI subsequently recruited and hired Liebermann to work for OSI to develop the "Temperfect Oven" similar to and based upon the "Thermodyne Oven." Also, Thermodyne alleged that OSI and Beltec advertised and promoted the "Temperfect Oven" in the marketplace.

On January 20, 1997, OSI and Beltec requested that their respective insurance companies defend the lawsuit.[4] OSI and Beltec were both insured by Liberty Mutual; OSI was insured from January 1, 1990, until December 31, 1991, and Beltec was insured from July 24, 1990, to July 24, 1993. Liberty Mutual declined to defend OSI and Beltec via letter on April 24, 1997. *Id.* at 417.

On February 5, 1999, the complaint in this case was filed in Marion Superior Court, *id.* at 2; OSI and Beltec brought suit against Liberty Mutual alleging that

---

**1.** OSI and Beltec's March 4, 2005, Motion for Oral Argument is hereby denied.

**2.** McDonald's is a food service retailer that franchises "fast food" restaurants. McDonald's has "more than 30,000 local restaurants serving nearly 50 million people in more than 119 countries each day." http://www.mcdonalds. com/corp/about.html (last visited June 28, 2005).

**3.** The suit was originally filed in the United States District Court for the Northern District of Indiana but was transferred to the United States District Court for the Northern District

of Illinois because both OSI's and Beltec's principal places of business are Aurora, Illinois.

**4.** The McDonald's Insurers settled the Thermodyne lawsuit on May 8, 1997, "by making a multimillion dollar payment." Appellant's App. p. 426. In February 1999, McDonald's Insurers sued OSI and Beltec seeking subrogation, contribution, and indemnity for the Thermodyne lawsuit. *Id.* at 419. Liberty Mutual determined that it had no duty to defend this lawsuit in a letter addressed to OSI dated May 27, 1999. *Id.* at 437.

Liberty Mutual had a duty to defend in the underlying Thermodyne suit under the "advertising injury" and "personal injury" provisions of their insurance policies.[5] Liberty Mutual denied coverage, claiming that it had no duty to defend OSI and Beltec because Thermodyne's claims did not trigger advertising injury or personal injury coverage.

Both sides filed Motions for Summary Judgment. The trial court granted OSI and Beltec's Joint Motion for Summary Judgment against Liberty Mutual. The trial court ordered that Liberty Mutual must pay: (1) half of the cost in defending the Thermodyne litigation to OSI, a total of $514,320.62, because OSI was also insured by another insurance company; (2) Beltec's costs in defending the Thermodyne litigation; and (3) OSI and Beltec's attorneys' fees in prosecuting the declaratory judgment against Liberty Mutual. *Id.* at 36–37. Liberty Mutual has appealed the judgment, the award of the costs in defending the Thermodyne litigation, and the award of attorneys' fees for the declaratory judgment action; OSI cross-appeals the trial court's order that Liberty Mutual pay only half of OSI's legal fees and expenses from the Thermodyne litigation.

### Discussion and Decision

Liberty Mutual makes three arguments on appeal: (1) the trial court erred in granting summary judgment when it concluded that the advertising injury and personal injury provisions of OSI's and Beltec's policies [6] triggered Liberty Mutual's duty to defend; (2) it has viable contractual and public policy defenses that preclude imposition of liability on the part of Liberty Mutual; and (3) the trial court erred in ordering Liberty Mutual to pay OSI and Beltec's attorneys' fees in prosecuting the declaratory judgment action. On cross-appeal, OSI alleges that the trial court erred in deciding that because OSI had collected from its other insurance company in the Thermodyne lawsuit, Federal Insurance Company, Liberty Mutual was only required to pay half of OSI attorneys' fees in the Thermodyne lawsuit. We address each issue in turn.

Before reaching the substantive issues, we address the choice of law issue in this case. Liberty Mutual argued before the trial court that the law of Illinois should apply to this case because, as the parties agree, the principal place of business for both OSI and Beltec is Illinois. *Id.* at 18. OSI and Beltec contended that Indiana law applied. The trial court concluded, "Because there is no actual difference between [Illinois' and Indiana's] laws, Indiana law applies to the duty to defend and bad faith denial of coverage claims of Plaintiffs [OSI and Beltec] against Defendants, Federal Insurance Company and Liberty Mutual Insurance Company." *Id.* at 20–21. On appeal, Liberty Mutual asserts:

In its pleadings below, Liberty Mutual maintained that under Indiana choice-of-law rules, Illinois law should be held to control all issues in this case. However, as the trial court noted in its ruling on

---

**5.** Federal Insurance Company, who, in addition to insuring McDonald's, insured OSI, was also named as a Defendant and subsequently brought a counterclaim against OSI and Beltec. The trial court found a bad faith denial of coverage as to OSI but not as to Beltec. Appellant's App. p. 23. Federal Insurance Company settled and was dismissed as to all claims and is not a party on appeal. *See id.* at 39.

**6.** OSI and Beltec had separate policies with Liberty Mutual. As Liberty Mutual establishes in its Brief, though, the relevant provisions of the policies for the purposes of this case were "substantially the same." Appellant's Br. p. 4. As such, we will quote from one policy only throughout the opinion.

the parties' motions for summary judgment, there are few actual differences between the relevant laws of Indiana and Illinois. Accordingly, for purposes of this appeal, Liberty Mutual will rely on the law of both states.

Appellant's Br. p. 14.

■ Liberty Mutual's Brief on appeal misstates the trial court's actual decision below. While the trial court did acknowledge that there was no actual difference between the law of Indiana and the law of Illinois, the trial court found that because there was no difference the law of Indiana would apply, not that the law of both states applies. *See* Appellant's App. p. 20–21. This is consistent with Indiana precedent. *See Hartford Accident & Indem. Co. v. Dana Corp.*, 690 N.E.2d 285, 291 (Ind.Ct.App.1997) ("If the purposes and policies of two potential rules are the same, the forum should apply the forum law."), *trans. denied.* Thus, to the extent that Liberty Mutual's Brief and its use of the laws of both states is an attempt to argue that the trial court erred in applying Indiana law, this argument is not supported by cogent reasoning or authority and is therefore waived. *See* Ind. Appellate Rule 46(A)(8)(a). We will apply Indiana law throughout our opinion because the trial court based its decision on Indiana law. As a practical matter, however, the choice of Indiana or Illinois law does not change the ultimate outcome of this case because the law of both states on the issues presented in this appeal is the same.

### I. Summary Judgment

Liberty Mutual's first contention on appeal is that the trial court erred in granting summary judgment to OSI and Beltec because Liberty Mutual did not have a duty to defend OSI and Beltec. More specifically, Liberty Mutual claims that the acts alleged to have been committed in the underlying Thermodyne lawsuit were not covered by OSI's and Beltec's insurance policies issued by Liberty Mutual.

Our standard of review when considering a ruling on a motion for summary judgment is well settled, and it is the same standard used by the trial court. *Union Sec. Life Ins. Co. v. Acton*, 703 N.E.2d 662, 664 (Ind.Ct.App.1998), *trans. denied.* We construe the designated evidence in a light most favorable to the nonmoving party and determine whether the record reveals a genuine issue of material fact and whether the trial court correctly applied the law. *Id.* As is true with other contracts, the interpretation of an insurance policy is a question of law. *Vann v. United Farm Family Mut. Ins. Co.*, 790 N.E.2d 497, 502 (Ind.Ct.App.2003), *trans. denied*, 804 N.E.2d 751 (Ind.2003). Thus, cases involving interpretation of insurance policies are particularly appropriate for summary judgment. *Id.*

■ OSI and Beltec were granted summary judgment on the issue of Liberty Mutual's failure to defend. Initially, we note that an insurer's duty to defend its insureds is broader than its duty to indemnify. *Jim Barna Log Sys. Midwest, Inc. v. Gen. Cas. Ins. Co. of Wis.*, 791 N.E.2d 816, 823 (Ind.Ct.App.2003), *trans. denied*, 804 N.E.2d 756 (Ind.2003). We determine the insurer's duty to defend from the allegations contained within the complaint and from those facts known or ascertainable by the insurer after reasonable investigation. *Id.* If the pleadings reveal that a claim is clearly excluded under the policy, then no defense is required. *Id.*

The insurance policies issued to OSI and Beltec by Liberty Mutual both stated as follows:

This insurance applies to: (1) "Personal injury" caused by an offense arising out

of your business, excluding advertising, publishing, broadcasting or telecasting done by or for you; (2) "Advertising injury" caused by an offense committed in the course of advertising your goods, products or services . . . .

\* \* \* \* \*

"Advertising injury" means injury arising out of one or more of the following offenses: a. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services. b. Oral or written publication of material that violates a person's right of privacy. c. Misappropriation of advertising ideas or style of doing business; or d. Infringement of copyright, title or slogan.

\* \* \* \* \*

"Personal injury" means injury, other than "bodily injury", arising out of one or more of the following offenses: a. False arrest, detention or imprisonment; b. malicious prosecution; c. The wrongful eviction from wrongful entry into or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor; d. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or e. Oral or written publication of material that violates a person's right of privacy.

Appellant's App. p. 284, 288, 289–90.

In the underlying Thermodyne lawsuit, OSI and Beltec were alleged to have disparaged the "Thermodyne Oven," Thermodyne technology, and the ownership of the developments of the oven or technology in that Liebermann, as OSI and Beltec's agent, in oral or written form claimed "absolute ownership not only in the developments and improvements in the Thermodyne oven but in the" flat, solid aluminum plate shelving as well. *Id.* at 387. Thermodyne, however, claimed that the flat, solid aluminum plate shelving and technology in the "Thermodyne Oven" was Thermodyne's "exclusive, secret technology." *Id.* at 381. Thus, Liebermann's statements disparaged the "Thermodyne Oven" by creating confusion about the product and the technology in the marketplace because it was unclear as to which company, OSI/Beltec or Thermodyne, had the rights to and was producing an oven with the unique technology. As a result of such confusion, businesses were allegedly deterred from purchasing the "Thermodyne Oven." This disparagement triggered Liberty Mutual's duty under the "oral or written publication of material that . . . disparages a person's or organization's goods, products or services" clause in the "Personal Injury" coverage. *Id.* at 290. Consequently, the trial court did not err in its finding that Liberty Mutual breached its duty to defend OSI and Beltec in the Thermodyne litigation.

## II. Contractual and Public Policy Defenses

Liberty Mutual next argues that despite having been found in breach of its duty to defend OSI and Beltec, *id.* at 22–23, it has a defense that the insurance policies exclude coverage for acts constituting a willful violation of a penal statute. Liberty Mutual further contends that it should not be liable for any fees or costs incurred by OSI and Beltec before they gave notice to Liberty Mutual and that to allow OSI and Beltec, through the purchase of a Liberty Mutual insurance policy, to insure themselves against intentional misconduct violates public policy. Finally, Liberty Mutual asserts that, as to OSI, the wrongdoing

alleged in Thermodyne's complaint for which OSI sought a defense by Liberty Mutual did not occur during the policy period. We agree with Liberty Mutual that it should not be liable for defense costs prior to OSI's and Beltec's giving of notice of the Thermodyne suit to Liberty Mutual; we disagree with Liberty Mutual on all other contentions.

■ First, Liberty Mutual asserts that OSI and Beltec are not entitled to coverage from Liberty Mutual because of the insurance contract's exclusion for acts constituting a willful violation of a penal statute. In its Brief, Liberty Mutual's entire argument is as follows:

> Count I of the Thermodyne complaint consists entirely of alleged willful violations of the Illinois Consumer Fraud and Deceptive Business Practices Act.... Similarly, Count II seeks a remedy under the Illinois Trade Secrets Act.... The Policies expressly exclude coverage for advertising injury which arises out of "the willful violation of a penal statute or ordinance committed by or with the consent of the insured[.]" (Appellant App. P.283–[8]4)[.] Accordingly, Plaintiffs are not entitled to any coverage for Counts I and II of the Thermodyne lawsuit.

Appellant's Br. p. 29. Liberty Mutual has failed to support its argument with pertinent authority or cogent reasoning. Liberty Mutual's argument is therefore waived. *See* Ind. Appellate Rule 46(A)(8)(a). Waiver notwithstanding, we would note that the amended complaint from the Thermodyne lawsuit is in eight counts as follows: (I) Illinois Consumer Fraud and Deceptive Business Practices Act...; (II) Illinois Trade Secrets Act...; (III) Unfair Competition; (IV) Breach of Confidence; (V) Interference with Contractual Relations; (VI) Breach of Fiduciary Duty; (VII) Breach of Contract; and (VIII) Conspiracy. Appellant's App. p.

387–93. Even assuming that Counts I and II are excluded pursuant to the policy's provision that the insurance "does not apply to: 'Personal injury' or 'advertising injury': ... (3) Arising out of the willful violation of a penal statute or ordinance committed by or with the consent of the insured," *id.* at 284, Liberty Mutual does not allege that the other six counts alleged in the complaint are clearly excluded under the policy. Because some counts of the complaint could have resulted in OSI's and Beltec's liability for which Liberty Mutual would have been required to indemnify them, Liberty Mutual could not refuse to defend OSI and Beltec on the grounds that two of the counts alleged willful violations of penal statutes. *See Transamerica Ins. Servs. v. Kopko*, 570 N.E.2d 1283, 1285 (Ind.1991) ("[I]f the policy is otherwise applicable, the insurance company is required to defend even though it may not be responsible for all of the damages assessed ...."). Indiana law is clear that the duty to defend is broader than the duty to indemnify. *Seymour Mfg. Co., Inc. v. Commercial Union Ins. Co.*, 665 N.E.2d 891, 892 (Ind.1996), *reh'g denied.*

Second, Liberty Mutual contends that the trial court erred in awarding any defense costs to OSI and Beltec that they incurred before OSI and Beltec notified Liberty Mutual about the Thermodyne lawsuit. The insurance policy states: "If a claim is made or 'suit' is brought against any insured, you must: (1) Immediately record the specifics of the claim or 'suit' and the date received; and (2) Notify us as soon as practicable." Appellant's App. p. 287. The policy also states: "No insureds will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without [Liberty Mutual's] consent." *Id.* The original complaint in the Thermodyne

litigation was filed in the United States District Court for the Northern District of Indiana on July 20, 1995, *id.* at 425, and that complaint was amended November 2, 1995.[7] *Id.* at 374–95. OSI and Beltec, however, did not request that Liberty Mutual defend the lawsuit until January 20, 1997. *See id.* at 421, 425.

■ Here, OSI and Beltec's primary response to Liberty Mutual's notice argument was estoppel—that Liberty Mutual was estopped from raising *any* policy defenses as a result of Liberty Mutual's failure to defend. *See, e.g.,* "Reply of Plaintiffs [OSI and Beltec] in Support of Their Motion for Summary Judgment Against [Liberty Mutual] on Duty to Defend," Appellant's App. p. 517, 542 (noting "Liberty Mutual had a duty to defend [OSI and Beltec], and once Liberty Mutual breached that duty it is estopped from raising any defenses to coverage, including its purported defense that it received late notice from [OSI and Beltec]"); "Plaintiffs [OSI and Beltec]'s Tender of Proposed Findings of Fact and Conclusions of Law," *id.* at 500, (stating "[A]s acknowledged by Liberty Mutual's counsel in oral argument, policy defenses such as 'notice' and any others, were waived by the insurers' refusal to defend."); "Memorandum in Support of [OSI and Beltec]'s Petition for Damages and Attorneys Fees," *id.* at 708 (noting that Liberty Mutual is "estopped from asserting any defenses to [OSI and Beltec]'s petition for damages, fees, and costs incurred in the *Thermodyne* litigation"); "[OSI and Beltec]'s Pretrial Memorandum of Law Regarding Damages and Attorneys' Fees," *id.* at 728, 729, 734 (stating

"Liberty [Mutual] is estopped from raising any defenses to the damages sought by plaintiffs in their amended petition"; "Insurers ... that breach the duty to defend its insureds are estopped from asserting any defenses, limitations, or exclusions to coverage under ... Indiana ... law"; noting that based on estoppel, "Liberty [Mutual] is liable for the fees OSI incurred prior to tendering the claim to Liberty [Mutual]").

OSI and Beltec's estoppel argument misses the mark. The cases addressing collateral estoppel as applied to insurers instruct that "[a]n insurer may ... elect not to defend an insured party in a lawsuit if, after investigation of the complaint, the insurer concludes that the claim is patently outside the risks covered .... [but] **the insurer will be bound at least to the matters necessarily determined in the lawsuit.**" *State Farm Fire & Cas. Co. v. T.B.,* 762 N.E.2d 1227, 1231 (Ind.2002) (citation and internal quotations omitted) (emphasis added); *see also Liberty Mut. Ins. Co. v. Metzler,* 586 N.E.2d 897, 900 (Ind.Ct.App.1992) ("[A]n insurer is ordinarily bound by the result of litigation to which its insured is a party, so long as the insurer had notice and the opportunity to control the proceedings."), *trans. denied.* Thus, the collateral estoppel doctrine applies to matters necessarily determined in the Thermodyne litigation of which Liberty Mutual had notice. The issue of defense costs incurred before the insurer has notice, however, is an issue of contract interpretation and the contract is what binds the parties, not collateral estoppel.

---

**7.** The parties are unclear as to which date in 1995—the July, 20, 1995, date when the original complaint was filed or the November 2, 1995, date when the amended complaint was filed—is the date upon which they rely. *See, e.g.,* Appellant's App. p. 417 (indicating in a letter from Liberty Mutual to OSI Assistant

Vice–President dated April 24, 1997, as follows: "The **complaint was filed in 1995,** but [Liberty Mutual] did not receive notice of the claim until we received your January 20, 1997 demand letter") (emphasis added). Regardless, the difference of approximately four months does not change our analysis.

Consequently, OSI and Beltec's estoppel argument fails on this issue.

This case is analogous to *Milwaukee Guardian Insurance Inc. v. Reichhart*, 479 N.E.2d 1340 (Ind.Ct.App.1985), *reh'g denied, trans. denied.* In *Reichhart*, the insured retained an attorney after being sued on the grounds of negligence, but the insured did not notify his homeowner's insurance of the lawsuit. The insured was successful at trial. The insured tendered written notice to his homeowner's insurance company after the trial was completed, which was approximately eleven months after the filing of the complaint. The insurance company determined that the acts alleged in the complaint would have been covered by the insured's policy but denied liability because of the insured's failure to notify the insurance company of the complaint and lawsuit until after the trial had been completed. The insured filed suit against the insurance company, seeking to recover expenses and attorney's fees incurred in retaining an attorney to defend him in the negligence lawsuit.

The insurance policy provisions at issue in *Reichhart* were substantially similar to the pertinent provisions in OSI's and Beltec's insurance policies with Liberty Mutual.[8] The insured did not argue that the contract provisions were ambiguous; moreover, the insured conceded that he voluntarily employed the attorney in the negligence lawsuit. In arguing that the insurance company should nonetheless pay for expenses and attorney's fees, the insured argued that he was unaware that his homeowner's insurance policy would have covered the allegations of the negligence lawsuit and that because of the attorney's skill and consequent success at trial, the insurance company was not prejudiced by the insured's delay in giving notice.

This Court resolved the case by employing the two-part analysis used when examining a notice provision of an insurance contract. In the first part of the analysis, as this Court has heretofore explained, we inquire whether the notice was tendered within a reasonable time. *See Shelter Mut. Ins. Co. v. Barron*, 615 N.E.2d 503, 507 (Ind.Ct.App.1993), *trans. denied.* Second, we inquire whether the insurer suffered prejudice. *Id.* If the notice of the filing of the lawsuit was not tendered within a reasonable time, there is a presumption of prejudice to the insured. *Id.* However, this presumption "may be rebutted by evidence that prejudice did not actually occur." *Id.*

In *Reichhart*, we concluded that, as to the first part of the analysis, the insured did not file notice within a reasonable time, and, as such, prejudice to the insured was presumed. Addressing the second part of the analysis, we concluded that the insured did not rebut the presumption of prejudice, and indeed that prejudice was established as a matter of law because: (1) the insurance company was denied the opportunity to offer settlement or guide the course of litigation; (2) the insurance company was not given the opportunity to select an attorney more familiar with insurance defense to defend the suit; and (3) the insurance company was unable to negotiate the amount of attorney's fees. Ultimately, we held that:

---

8. The notice provision in *Reichhart* provided that in the event of an accident or occurrence, the insured was required to provide written notice of the accident or occurrence to the insurance company "as soon as practicable," *Reichhart*, 479 N.E.2d at 1341. The "voluntary payment" provision said that "the insured shall not, except at the insured's own cost, voluntarily make any payment, assume any obligation or incur any expense other than for first aid to others at the time of the bodily injury." *Id.*

An insurance company cannot be forced to pay fees and expenses incurred wholly without its knowledge or consent pursuant to an insurance contract when the insured has made no effort to fulfill his duties under that contract. When trial has been held and a cause of action has been concluded without notice to the insuring company, the company **will not subsequently be required to disburse proceeds under that policy for expenses or fees incurred without its knowledge.**

*Reichhart,* 479 N.E.2d at 1343 (emphasis added).

▮ Following *Reichhart* and applying the two-part analysis in this case, we first turn our attention to the inquiry of whether the notice was tendered within a reasonable time. We have said that when an insurance policy calls for notice "as soon as possible" this means within a reasonable time. *Barron,* 615 N.E.2d at 507. When the facts regarding the notice are undisputed, the issue of reasonableness is a question of law for the court. *Koenig v. Bedell,* 601 N.E.2d 453, 455 (Ind.Ct.App. 1992). Here, the fact that OSI and Beltec were named as defendants in the Thermodyne lawsuit in 1995 and that notice was not given to Liberty Mutual until January 20, 1997, is undisputed. Therefore, we find as a matter of law that the fourteen to eighteen months' delay in OSI and Beltec's being sued by McDonald's and OSI and Beltec's notification to Liberty Mutual to be unreasonable as a matter of law. As such, we turn our attention to the second part of the inquiry: prejudice.

▮ The second part of the inquiry is whether Liberty Mutual was prejudiced by OSI and Beltec's delay in notice. There is a presumption that Liberty Mutual was prejudiced in this case because OSI and Beltec's notice was unreasonable as a matter of law; it is now OSI and Beltec's

burden to rebut this presumption. As our supreme court has held, the insured "can establish some evidence that prejudice did not occur in the particular situation. Once such evidence is introduced, the question becomes one for the trier of fact to determine whether any prejudice actually existed." *Miller v. Dilts,* 463 N.E.2d 257, 265–66 (Ind.1984). Naturally, the insurance company can also present evidence to the trier of fact in support of its claim of prejudice. *Id.* In short, "the insured has the burden to produce evidence that prejudice did not actually occur in the particular situation." *Askren Hub States Pest Control Servs., Inc. v. Zurich Ins. Co.,* 721 N.E.2d 270, 279 (Ind.Ct.App.1999). Where the insured presents sufficient evidence to rebut the presumption, the burden shifts back to the insurer to establish prejudice. *Id.* at 280.

▮ As to whether Liberty Mutual was prejudiced, OSI and Beltec argued:
Here, when Liberty Mutual was presented with a request for coverage of the [McDonald's Insurer's] lawsuit with allegations that 'mirrored the allegations of the Thermodyne lawsuit' (Liberty Mutual's Response, p. 3), Liberty Mutual flatly denied coverage reciting many of the same purported reasons as in its denial for coverage of the Thermodyne lawsuit, but not even mentioning 'notice.' Because Liberty Mutual was going to deny coverage for the Thermodyne complaint regardless as to the notice provided, Liberty Mutual cannot claim prejudice or assert a notice defense here. Overall, Liberty Mutual has failed to establish a notice defense . . . .

"Reply of Plaintiffs [OSI and Beltec] in Support of Their Motion for Summary Judgment Against [Liberty Mutual] on Duty to Defend," Appellant's App. p. 543–44. We do not find OSI and Beltec's argument rebutting the presumption of

prejudice convincing and instead find, just as in *Reichhart*, that in the period before OSI and Beltec tendered notice, Liberty Mutual: (1) was denied the opportunity to offer settlement or guide the course of litigation; (2) was not given the opportunity to select an attorney more familiar with insurance defense to defend the suit; and (3) was unable to negotiate the amount of attorney's fees. *See Reichhart*, 479 N.E.2d at 1343. As such, Liberty Mutual is not liable for any fees or costs incurred by OSI and Beltec prior to January 20, 1997.[9] We reverse the trial court's award of fees and costs to OSI and Beltec to the extent that those fees and costs were incurred before January 20, 1997, and we remand to the trial court for a precise calculation of the amount of the fees and costs incurred after Liberty Mutual received notice on January 20, 1997.

■ Third, Liberty Mutual contends that public policy prohibits OSI and Beltec from insuring themselves against the intentional acts of misconduct alleged against them. In a cursory analysis, Liberty Mutual cites no Indiana authority, and we could find none, that supports this argument. Moreover, Liberty Mutual, in its Brief, summarily states that "[c]ourts have denounced insurance coverage for *intentional acts* as against public policy." Appellant's Br. p. 29 (emphasis added). The policy at issue here, however, provides coverage for, among other things, advertising injury. *See* Appellant's App. p. 284 (stating "This insurance applies to . . . 'Advertising injury' caused by an offense committed in the course of advertising your goods, products or services . . ."). We are perplexed at how advertising could be anything but intentional conduct and even more mystifying to us is Liberty Mutual's apparent demand for us to declare that a

large portion of its own commercial insurance policy is untenable under the law. We cannot ignore the fact that the insurance policy about which Liberty Mutual now complains was a policy that Liberty Mutual authored and sold to OSI and Beltec. We disagree with Liberty Mutual that to enforce the very words that it chose to incorporate as a part of its insurance policy would be a violation of public policy. We decline to reverse on this non-meritorious issue.

■ Fourth, Liberty Mutual claims that OSI is not and has never been entitled to a defense by Liberty Mutual because the events for which OSI sought coverage occurred after OSI's policy had expired with Liberty Mutual. As this Court has previously held, "If the pleadings reveal that a claim is *clearly excluded* under the policy, then no defense is required." *Ill. Farmers Ins. Co. v. Wiegand*, 808 N.E.2d 180, 184 (Ind.Ct.App.2004) (emphasis added), *trans. denied*. OSI was insured by Liberty Mutual from January 1, 1990, until December 31, 1991. Thermodyne's complaint detailed alleged wrongdoing by OSI regarding the "Temperfect Oven" in 1990 and 1991. *See* Appellant's App. p. 383–85 (detailing that in April 1990, OSI and McDonald's planned to develop their own oven based upon trade secrets acquired from Thermodyne; Liebermann, while still an employee of Thermodyne, shipped prototypes of the "Thermodyne Oven" to OSI without Thermodyne's knowledge in May 1990; Liebermann resigned from Thermodyne and secretly began working for OSI in July 1990). In addition, there are allegations of wrongdoing that do not carry a precise date. *See id.* at 386 (describing an article discovered in 1993 by Thermodyne in a "back issue" of a trade magazine that detailed the "Temperfect" oven). In sum,

---

**9.** Our holding does not preclude recovery of defense fees incurred after the insured has tendered notice where the insurance company is found to have breached its duty to defend.

the pleading in the underlying Thermodyne litigation did not show that the claims were clearly excluded under OSI's policy with Liberty Mutual. Thus, Liberty Mutual cannot now assert that no defense was required.

### III. OSI's and Beltec's Attorneys' Fees in Declaratory Judgment Action

 Liberty Mutual argues that the trial court erred in awarding OSI and Beltec their attorneys' fees plus statutory interest—a total of $320,435.54—for prosecuting the declaratory judgment against Liberty Mutual. Even OSI and Beltec concede that the general rule in Indiana is that each party involved in litigation must pay its own attorneys' fees. *See Ind. Ins. Co. v. Plummer Power Mower & Tool Rental, Inc.*, 590 N.E.2d 1085, 1093 (Ind. Ct.App.1992). OSI and Beltec contend that this Court should nonetheless change the law in Indiana by adopting a dissent to the denial of transfer written by Justice DeBruler in 1995 in which he proposed an exception to the American Rule in declaratory judgment actions concerning automobile insurance policies. *See Mikel v. Am. Ambassador Cas. Co.*, 652 N.E.2d 503, 504–507 (Ind.1995) (DeBruler, J., dissenting).

 The rule that each party pays its own fees is the so-called "American Rule." *Kikkert v. Krumm*, 474 N.E.2d 503, 504–05 (Ind.1985). Put another way, attorneys' fees are not allowable in the absence of a statute or some agreement or stipulation authorizing such an award. *Plummer*, 590 N.E.2d at 1093. Our supreme court has consistently said that Indiana follows the "American Rule." *See State Bd. of Tax Comm'rs v. Town of St. John*, 751 N.E.2d 657, 658–59, 662 (Ind. 2001); *Noble County v. Rogers*, 745 N.E.2d 194, 199 n. 6 (Ind.2001); *Kikkert*, 474 N.E.2d at 504–05; *Trotcky v. Van*

*Sickle*, 227 Ind. 441, 445, 85 N.E.2d 638, 640 (1949) (observing that the "general rule requires each party to the litigation to pay his own counsel fees"). We may not overrule the decisions of our supreme court. *State v. Virtue*, 658 N.E.2d 605, 609 (Ind.Ct.App.1995), *reh'g denied, trans. denied*. Under Indiana precedent, we reverse the trial court's awarding of OSI's and Beltec's attorneys' fees from the declaratory judgment action.

### IV. OSI's Cross–Appeal

In its cross-appeal, OSI argues that the trial court erred in ordering Liberty Mutual to pay only one-half of the legal fees and expenses that OSI incurred in the Thermodyne lawsuit on the basis that OSI was also insured by Federal Insurance Company. OSI specifically contends that Liberty Mutual is estopped from relying on the "other insurance" exclusion in the contract because Liberty Mutual failed to defend OSI. The trial court's order provided as follows:

> The parties have stipulated that the total amount that OSI incurred in defending the Thermodyne litigation, plus statutory interest, is $1,028,641.23. Had Liberty [Mutual] chosen to defend OSI (which would have avoided this costly and protracted litigation), the traditional split in costs between Liberty [Mutual] and the Federal Insurance Company in defending OSI would have been 50%.

> * * * * *

> Liberty shall pay to OSI $514,320.62 **as a portion** of the legal fees, expenses, and interest OSI incurred in defending the *Thermodyne, St. Paul,* and *McDonald's* lawsuits.

Appellant's App. p. 36–37 (emphasis added). Federal Insurance Company, which insured OSI but not Beltec, was initially named as a defendant in this lawsuit. The

trial court concluded that Federal Insurance Company had a duty to defend OSI but not Beltec and that Federal Insurance Company in bad faith breached its duty to defend. *Id.* at 22–23. Federal Insurance Company then reached a settlement and was dismissed from the lawsuit. *Id.* at 39–40. The "Order of Dismissal" shows that Federal Insurance Company was dismissed from the lawsuit by stipulation from the parties but does not reveal how much, if anything, was paid in conjunction with the dismissal. *See id.* Liberty Mutual states in its briefs submitted to the trial and appellate courts that Federal Insurance Company paid $600,000 to OSI in the settlement. *See id.* at 764; Appellant's Br. p. 11–12.

OSI's response to Liberty Mutual's description of the Federal Insurance Company settlement does not deny that there was a settlement with Federal Insurance Company; instead, OSI focuses on the fact that the amount of the settlement is not a matter of record. Nonetheless, we cannot determine from the record before us the exact amount of the settlement. Nor can we tell whether the settlement amount covered the costs to defend the Thermodyne suit, the damages for bad faith, the costs of the declaratory action, or all of the above.

 While OSI frames this issue as whether Liberty Mutual is entitled to raise the policy defense of "other insurance" after wrongfully denying coverage, we conclude that the issue is actually one of double recovery on the part of OSI. As has been previously explained, "the basic purpose of an insurance policy [is] to cover the amount of a covered loss, no more and no less, subject only to that policy's limits." *Beam v. Wausau Ins. Co.,* 765 N.E.2d 524, 531 (Ind.2002), *reh'g denied.* In addition, "[t]he statutes and courts of this state have long evinced a strong policy against double recovery." *State v. Doody,* 556 N.E.2d 1357, 1361 (Ind.Ct.App.1990), *reh'g denied, trans. denied.*

In short, OSI is entitled to be compensated only for its damages and is not entitled to a windfall because it was insured by two insurance companies. Because neither party placed in the record any evidence as to the appropriate split in costs between Liberty Mutual and Federal Insurance Company, nor was there evidence presented as to the amount that Federal Insurance Company paid to OSI for the costs to defend the Thermodyne action, we cannot say that the trial court erred in ordering Liberty Mutual to pay 50% of OSI's costs to defend the Thermodyne suit.

Affirmed in part, reversed in part, and remanded.

SHARPNACK, J., and MAY, J., concur.