**DREADED, INC., Appellant–Plaintiff,**

v.

**ST. PAUL GUARDIAN INSURANCE COMPANY, St. Paul Protective Insurance Company, and St. Paul Fire and Marine Insurance Company, Appellees–Defendants.**

No. 49A02–0701–CV–78.

Court of Appeals of Indiana.

Dec. 28, 2007.

George M. Plews, Brett T. Nelson, Plews Shadley Racher & Braun LLP, Indianapolis, IN, Attorneys for Appellant.

Richard A. Rocap, Rocap Witchger LLP, Mary K. Reeder, Riley Bennett & Egloff, LLP, Indianapolis, IN, Jeffrey C. Gerish, Kenneth C. Newa, David A. Dworetsky, Plunkett & Cooney, P.C., Bloomfield Hills, MI, Attorneys for Appellees.

## OPINION

KIRSCH, Judge.

Dreaded, Inc. ("Dreaded") appeals the trial court's grant of summary judgment in favor of St. Paul Guardian Insurance Company, St. Paul Protective Insurance Company, and St. Paul Fire and Marine Insurance Company (collectively "St. Paul") holding that St. Paul is not liable for environmental cleanup defense costs incurred prior to receiving notice of potential liability.[1] Dreaded contends that the trial court erred in holding that its delay in notifying St. Paul of its claim was a material breach of Dreaded's comprehensive general liability policy ("policy") with St. Paul. Dreaded raises two issues, which we consolidate and restate as: whether the trial court erred in entering summary judgment finding that Dreaded cannot recover defense costs that it incurred prior to notifying St. Paul.[2]

We affirm in part, reverse in part, and remand for further proceedings.

## FACTS AND PROCEDURAL HISTORY

On November 17, 2000, Dreaded received a claim letter from the Indiana Department of Environmental Management ("IDEM") that demanded Dreaded conduct a site characterization of their former Muncie Truck Center to determine the extent of its environmental contamination. *Appellant's App.* at 174–75. The letter also warned Dreaded that failure to submit the necessary documentation would constitute a violation of state and federal laws and could subject Dreaded to formal enforcement actions including civil penalties. *Id.*

Dreaded hired legal counsel to represent it against the IDEM claim and an environmental contractor, Troy Risk, Inc. ("Risk"), to perform the site characterization. Risk conducted its investigation and produced an August 21, 2001 Subsurface Soil Investigation Report and a December

---

1. We held oral argument on this matter on August 14, 2007. We commend counsel for both parties for their excellent oral and written advocacy.

2. Dreaded asserts two other issues. First, Dreaded claims that it is entitled to prejudgment interest for its pre-notice defense costs. Dreaded contends Indiana's authority on prejudgment interest discussed in *Traveler's Indemnity Co. v. Armstrong*, 442 N.E.2d 349, 355–56 (Ind.1991), mandates an award of prejudgment interest where, as here, its damages were complete and ascertainable at the time St. Paul denied its coverage. Because our decision does not resolve the appropriateness of the award of pre-notice defense costs, we do not reach the issue of prejudgment interest. Second, Dreaded claims that the trial court abused its discretion in granting St. Paul's motion to strike the affidavit of Robert W. Eherenman. Because we resolve the propriety of summary judgment without considering the affidavit, we also do not reach this issue.

19, 2002 Underground Storage Tank System Closure Report ("UST Report"). Dreaded submitted both reports to IDEM.

On August 29, 2003, IDEM sent Dreaded a second claim letter indicating it had reviewed the reports, and as a result of that review, ordered Dreaded to conduct further site investigation and fully delineate the extent of contamination as required under Indiana's Administrative Code. *Id.* at 177–79. Further, the letter stated that the UST Report revealed that not all closing sampling requirements had been satisfied and included a list of actions that must be taken. *Id.*

On March 24, 2004, Dreaded tendered an environmental liability claim to St. Paul under the terms of the policy. Six days later, St. Paul received Dreaded's demand that St. Paul take up the defense and reimburse Dreaded for all defense costs that had arisen since and were related to the initial IDEM claim letter. Since that time, Dreaded and St. Paul agreed on the payment of all defense costs from March 30, 2004 forward, and the IDEM dispute has been resolved. However, the defense costs incurred prior to that date remain the subject of this dispute.

Dreaded filed an action against St. Paul to recover its defense costs incurred prior to the tendered notice. Both sides submitted motions for summary judgment, and the trial court held that St. Paul was not liable for those defense costs under the following conclusions:

1. "As a prerequisite to bringing an action for proceeds under the policy, an insured must comply with all provisions of the contract, including the notice provision ... [."] *Milwaukee Guardian Ins., Inc. v. Reichhart,* 479 N.E.2d 1340, 1341–[4]2 (Ind.Ct.App.1985).

2. The notice requirement in general liability insurance policies is "materi-

al, and of the essence of the contract.["] *Miller v. Dilts,* 463 N.E.2d 257[, 263] ( [Ind.] 1984).

3. A policyholder has a duty to tender claims in order to trigger an insurer's duty to defend under a general liability policy. *Eastman v. United States,* 257 F.Supp. 315, 319 (S.D.Ind.1966).

[4.] An insurer "cannot be required to pay fees and expenses incurred wholly without its knowledge or consent pursuant to an insurance contract when the insured has made no effort to fulfill its duties under the contract.["] *Milwaukee Guardian Ins. Inc.,* [479 N.E.2d at 1341–42;] *Liberty Mutual Ins. Co. v. OSI Industries, Inc.,* 831 N.E.2d 192 (Ind.Ct.App.2005), *trans. den[ied].* All costs incurred by Dreaded in the Underlying IDEM claim prior to March 30, 2004 were incurred without St. Paul[']s knowledge and consent, and St. Paul has no obligation to reimburse Dreaded for those costs.

[5.] A showing of prejudice is not required in the present case, where St. Paul has not declined coverage based on a violation of conditions in the St. Paul policies, but instead has agreed to defend Dreaded under a reservation of rights, declining only to reimburse Dreaded for its pretender defense costs. *Dana Corp. v. Hartford Acc. & Ind. Co.,* No. 49D01 [-]9301 [-]CP[-]26 (Marion Super. Ct. Aug. 20, 1997).

[6.] Even if a showing of prejudice was required, a presumption of prejudice arises when an insured[']s delay in notification of a claim to its insurer is unreasonable as a matter of law. *Miller[,* 463 N.E.2d at 265–66].

[7.] Even if a showing of prejudice was required in this case, this Court finds that Dreaded[']s delay of nearly three and one-half years in tendering the Underlying IDEM claim to St. Paul is unreasonable as a matter of law, and gives rise to a presumption of prejudice in St. Paul[']s favor. This Court further rules that this presumption of prejudice has not been adequately rebutted by Dreaded, and that St. Paul has also factually established the existence of prejudice to it arising from the delay in tender.

[8.] For the reasons set forth above, this Court DENIES Dreaded[']s Motion for Partial Summary Judgment on Defense Costs, and GRANTS St. Paul[']s Counter–Motion for Summary Judgment. Dreaded[']s request for an award of pre-judgment interest is further DENIED.

[9.] This Court further GRANTS St. Paul[']s Motion to Strike The Second Affidavit of Robert W. Eherenman. The Court finds that Mr. Eherenman is unqualified to render opinions regarding whether St. Paul was prejudiced by Dreaded[']s delay in tendering the Underlying IDEM claim to St. Paul, and that his testimony in that regard amounts to improper testimony regarding legal conclusions.

*Appellant's App.* at 15–16. Thereafter, Dreaded moved to correct error, but the trial court denied the motion. Dreaded now appeals.

## DISCUSSION AND DECISION

■ Summary judgment is appropriate when the evidence establishes that there exists no designated issue of material fact and that the moving party is entitled to judgment as a matter of law. *State* *Auto Ins. Cos. v. Shannon,* 769 N.E.2d 228, 231 (Ind.Ct.App.2002) (citing Ind. Trial Rule 56(C); *Western Reserve Mut. Cas. Co. v. Holland,* 666 N.E.2d 966, 968 (Ind. Ct.App.1996)). When reviewing a trial court's grant or denial of a motion for summary judgment, the appellate court undertakes the same inquiry as the trial court, and this standard of review will not change when there are cross-motions for summary judgment. *Id.* (citing *Hendricks County Bank & Trust Co. v. Guthrie Bldg. Materials, Inc.,* 663 N.E.2d 1180, 1183 (Ind.Ct.App.1996), *trans. denied* (1997)). The reviewing court must consider each motion separately to determine whether the moving party is entitled to judgment as a matter of law. *Id.* Appellate courts review questions of law under a *de novo* standard and owe no deference to a trial court's legal conclusions. *Id.* (citing *Ind. Family & Soc. Servs. Admin. v. Radigan,* 755 N.E.2d 617, 620 (Ind.Ct.App.2001)).

■ The interpretation of an insurance policy presents a question of law that is appropriate for summary judgment. *Hartford Cas. Ins. v. Evansville Vanderburgh Pub. Library,* 860 N.E.2d 636, 640 (Ind.Ct.App.2007), *trans. denied.* If the language in the policy is unambiguous then it should be given its plain and ordinary meaning. *Id.* But, if the language is ambiguous, the policy should be strictly construed against the insurer. *Id.*

St. Paul denied Dreaded's claim for pre-notice defense costs on the basis of Dreaded's noncompliance with the notice provision and the voluntary payment provision. These clauses provide in relevant part:

> If an accident happens that may involve the liability protection provided in this policy, you or any other protected person must:

\* \* \*

2. Tell us or our agent what happened as soon as possible. Do this even though no demand for damages has been made against you or any other protected person, but you or another protected person is aware of having done something that may later result in a demand for damages. This notice should include all of the following:

- The time and place of the accident or incident;
- The protected person involved;
- The specific nature of the accident or incident including the type of demand for damages that may result; and
- The names and addresses of any witnesses and injured people.

\* \* \*

5. Not assume any financial obligation or pay out any money without our consent. But this rule doesn't apply to first aid given to others at the time of an accident.

Appellant's App. at 330. St. Paul claimed, and the trial court held, that noncompliance with these provisions constituted a material breach of the policy that relieved St. Paul of any obligation to pay pre-notice expenses.

On appeal, Dreaded argues that, to be relieved of it obligation to pay pre-notice defense costs, St. Paul was required to demonstrate that Dreaded's late notice resulted in actual prejudice. Even if the late notice is deemed presumptively prejudicial, Dreaded claims that it rebutted that presumption, or at least, created an issue of fact rendering summary judgment inappropriate.

While St. Paul contends that the noncompliance with the notice provision is distinct from the non-compliance with the voluntary payment provision, the differences are of no import. When presented with facts that included both failure to notify and breach of the provision prohibiting voluntary payments, our courts have opted to subsume the voluntary payment issue into the notice issue. *See Liberty Mutual Ins. Co. v. OSI Industries, Inc.*, 831 N.E.2d 192, 204 (Ind.Ct.App.2005). We likewise address only the notice provision.

Our analysis begins with *Miller v. Dilts*, 463 N.E.2d 257, 265–66 (Ind.1984), where our Supreme Court held that an insurer may not avoid liability under a policy's cooperation and notice clauses unless the insured's non-compliance with those clauses resulted in actual prejudice. When an insured fails to provide its insurer timely notice of an occurrence, we undertake a two-part test. First, we inquire whether the insured gave its insurer notice within a reasonable time. Second, we determine whether the insurer suffered prejudice by the delay. If notice was not tendered in a reasonable time, we presume prejudice, but the insured may rebut the presumption of prejudice. *Id.* at 266.

Thus, we first determine whether the delay in notice was reasonable. "[W]hen the facts of the case are not in dispute, what constitutes reasonable notice is a question of law for the court to decide." *PSI Energy, Inc. v. Home Ins.* 801 N.E.2d 705, 716 (Ind.Ct.App.2004), *trans. denied.* Dreaded delayed for three and a half years in providing notice to St. Paul. There was no barrier to providing notice to St. Paul, nor any legal justification for this delay. We hold as a matter of law that Dreaded's delay in notifying St. Paul of the IDEM claim was unreasonable, and we affirm the trial court's ruling on this issue.

We then move to the second part of the *Miller* analysis—whether the insurer suffered prejudice by the delay.

██ Because the delay was unreasonable, we presume that St. Paul was prejudice by the delay. *See Miller,* 463 N.E.2d at 266. This presumption is rebuttable. *Id.* at 265–66.

The trial court found that the presumption of prejudice had not been adequately rebutted by Dreaded. In doing so, the trial court erred. Because the matter before the trial court was a motion for summary judgment, the proper inquiry was not whether Dreaded has rebutted the presumption of prejudice; rather it is whether Dreaded designated sufficient evidence to raise an issue of material fact regarding such prejudice.

██ Because it had the benefit of the presumption, St. Paul was not required to put forth evidence of actual prejudice. Instead, Dreaded had the burden to put forth evidence that St. Paul was not prejudiced. *See Askren Hub States Pest Control Servs., Inc. v. Zurich Ins. Co.,* 721 N.E.2d 270, 279 (Ind.Ct.App.1999) ("... insured has the burden to produce evidence that prejudice did not occur in the particular situation.").

Since Miller, we have reviewed several cases involving whether prejudice to an insurer resulted from an insured's unreasonable delay in notice of a claim.

In *Milwaukee Guardian Ins. v. Reichhart,* 479 N.E.2d 1340, 1343 (Ind.Ct.App. 1985), *trans. denied,* two individuals sued a homeowner for claims that the homeowner did not initially believe were covered under his homeowner's insurance policy. The homeowner retained counsel, proceeded to trial, and successfully defended the case. Thereafter, the homeowner sought to recover from his insurance company the expenses he had incurred in his defense. This court acknowledged that the prejudice presumed by the delay may be rebutted, but concluded that where the matter was resolved on the merits, and the insurer never had an opportunity to settle, select other counsel, or negotiate the amount of attorney fees, prejudice was established as a matter of law. *Id.*

In *Allstate Ins. Co. v. Kepchar,* 592 N.E.2d 694 (Ind.Ct.App.1992), *trans. denied,* this court ruled that the insurer demonstrated sufficient prejudice by generally alleging that it was denied opportunities. *Id.* at 699. There, the insured was sued as a result of his involvement in a motorcycle collision. He did not provide notice to his umbrella policy insurer until a year after litigation commenced. The trial court ruled that the insurer was required to pay damages, and this court reversed. "We need not address these issues—as in [*Reichhart* ], the mere fact that the delay in notice precluded Allstate from exercising nearly every right reserved under the policy is itself enough to justify a finding of prejudice as a matter of law." *Id.* at 699;

In *PSI Energy, Inc. v. Home Ins.* 801 N.E.2d 705 (Ind.Ct.App.2004), *trans. denied,* the trial court denied the insurer's motion for summary judgment holding that it was not prejudiced by the delay in notice where it had actual knowledge of the insured's previous environmental contamination settlements, had interviewed witnesses related to the settlements, was deemed to be well aware of the facts and circumstances surrounding the insured's sites, and had completed a through investigation. On appeal, this court affirmed, holding that summary judgment in favor of the insurer was inappropriate because the facts surrounding the timing and extent of discovery were material and in dispute. Of particular relevance to the case now before us, the court noted that environ-

mental contamination claims are unique because, unlike automobile accident and personal injury claims, they require a substantial amount of investigation. *Id.* at 717.

In *Liberty Mutual Ins. Co. v. OSI Industries, Inc.*, 831 N.E.2d 192 (Ind.Ct.App. 2005), an oven manufacturer sued Liberty's insureds for patent and trademark infringement. The insureds did not notify their insurer until two years after the lawsuit was filed. As to payment of pre-notice defense costs, the trial court granted summary judgment for the insurer. This court found that the insured failed to put forth any evidence to rebut the presumption of prejudice. As a result, the court denied reimbursement of costs incurred by the insureds prior to the delayed notice. *Id.* at 204–05.

Finally, in an unpublished decision, Judge David Hamilton of the Southern District Federal Court of Indiana held that an insured, who notified its insurer four years after it began discussing environmental remediation with IDEM, was not precluded from recovering pre-notice defense costs based on the policy's voluntary payment provision, but was required to rebut the presumptive prejudice that arose from its unreasonably late notice. *Mechs. Laundry & Supply v. Am. Casualty Co. of Reading, PA,* no. 1:04–CV1122–DFH–TAB 2007 WL 1021452 (S.D.Ind. Mar.30, 2007). In analyzing prejudice, the court found that the insurer failed to show specific instances of prejudice, that the insured put forth sufficient facts that its expenses were necessary to its defense, and that to rule against the insured would render the presumption irrebuttable. *Id.* Federal cases interpreting Indiana law are persuasive authority but do not control on questions of Indiana law. *See Ind. Dept. of Pub. Welfare v. Payne,* 622 N.E.2d 461, 468 (Ind.1993).

Dreaded argues that it rebutted the presumption of prejudice, or at least, produced evidence to create an issue of material fact. Here, Dreaded designated evidence that once St. Paul received notice, it continued to defend the IDEM claim in the same way that Dreaded had defended it. It retained the same attorneys; it kept the same environmental consultants. Dreaded also designated the affidavit of Steve Browning, a senior project manager for American Environmental Corporation. *Appellant's App.* at 199. Browning opined that based on his review of the IDEM action, Dreaded's hiring of Risk avoided the need to undertake a Corrective Action Plan and other costs associated with remediation. *Id.* at 201. Further, Browning stated that Risk's investigation and remediation actions were necessary to address the IDEM claim. *Id.*

Dreaded has designated sufficient evidence to raise a genuine issue of material fact as to whether St. Paul was prejudiced as a result of the delayed notice. As a result, summary judgment was inappropriate. We leave to the trier of fact the issue of whether St. Paul was prejudiced. *See Miller,* 463 N.E.2d at 265–66 ("Once such evidence is introduced, the question becomes one for the trier of fact to determine whether any prejudice actually existed.").

Affirmed in part, reversed in part, and remanded for further proceedings.

BAKER, C.J., and MATHIAS, J., concur.