**HM HOLDINGS, INCORPORATED,**
Plaintiff–Appellee,

v.

**Sharyn L. RANKIN, as Personal Representative of the Estate of Robert S. Rankin, Deceased, Defendant–Appellant.**

No. 94–3533.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 29, 1995.

Decided Nov. 14, 1995.

Gerald B. Lurie, Janice Duban (argued), Rudnick & Wolfe, Chicago, IL, Daniel W. Glavin, Andrew J. Fetsch, Beckman, Kelly & Smith, Hammond, IN, for Plaintiff-Appellee.

William J. Moran (argued), Leonard M. Holajter, Blackmun, Bomberger & Moran, Highland, IN, for Defendant-Appellant.

Before CUMMINGS, FLAUM and MANION, Circuit Judges.

CUMMINGS, Circuit Judge.

In September 1990 plaintiff HM Holdings, Inc. ("Seller") filed a complaint in the district court to foreclose a land contract between its predecessor and Robert S. Rankin ("Buyer").[1] After the Buyer filed an answer and counterclaim in October 1990, Seller moved to dismiss the counterclaim and for entry of judgment on the pleadings. In August 1992 the district court granted Seller's motions but also simultaneously granted Buyer an opportunity to replead the counterclaim and answer.

In September 1992 Buyer filed an amended answer and amended counterclaim. The following month Seller moved to dismiss the amended counterclaim and for judgment on the pleadings. These motions were granted in April 1994 and trial was set on the issue of damages only. In September 1994 the district court entered judgment for foreclosure and sale against Buyer and also a personal money judgment for Seller in the amount of $687,332.97, resulting in this appeal.

## I.

## Facts

In its complaint to foreclose a land contract against Buyer, Seller alleged that the lawsuit arose out of an installment sale contract entered into on December 24, 1986, between Seller's predecessor in interest, SCM Corporation, Inc. ("SCM") and Buyer. Under the contract SCM agreed to sell and Buyer agreed to purchase industrial property at 1717 Summer Street, Hammond, Indiana. The purchase price of $500,000 was to be paid in monthly installments of $3,938.96 for 36 months beginning in February 1987, with the final installment of $358,782.20 to be paid in January 1990.

In January 1990, at Buyer's request, Seller agreed to amend the contract to provide for a seven-month extension of the January 1, 1990, due date of the balance of the purchase price. During this extension, Buyer was to make six additional installment payments to retire the outstanding principal and interest balance due under the contract by June 30, 1990. However, Buyer defaulted on the payment of the final four installments and also defaulted on his contractual obligation to pay the first installment of the real estate taxes due on the property for 1989. Therefore Seller brought this lawsuit seeking a personal money judgment against Buyer, a judgment foreclosing Buyer's equity of redemption, and an order that the property be sold to satisfy Seller's claim.

In the contract, SCM, Seller's predecessor, made the following express warranties concerning the condition of title to be conveyed to Buyer:

5. Warranties of Vendor. Vendor hereby warrants that Vendor, or a related corporate entity, affiliate, subsidiary, parent or

---

1. Robert Rankin died on April 3, 1994, and thereafter Sharyn L. Rankin, the personal representative of his estate, was substituted as Buyer. This opinion will refer to either Rankin as Buyer.

entity resulting from a corporate reorganization or merger of which Vendor was a part ('Owner'), has good and merchantable title to the Real Estate, free and clear of any and all liens, leases, restrictions and encumbrances, except as follows:

(i) Easements and restrictions of record;

(ii) Current real estate taxes not yet delinquent; and

(iii) Any other exception as disclosed in the title binder.

.    .    .    .    .

12. Additional Covenants and Representations of Vendor.... Vendor agrees and covenants to convey the Real Estate to Purchaser by Special (or Limited) Warranty Deed, subject only to easements and restrictions of record as of the date of this Contract; to the rights of persons in possession; to the lien of all taxes and assessments payable by purchaser hereunder; and to any other encumbrances which, by the terms of this Contract, are to be paid by Purchaser.

Furthermore, paragraph 4 of the Rider to the contract contained the following disclaimer concerning the condition of the property:

Notwithstanding anything contained to the contrary, Purchaser covenants and agrees that the purchase under the Contract shall be "AS IS" and Purchaser accepts the Real Estate and the improvements in an "AS IS, WHERE IS" condition, acknowledging that Purchaser has had adequate opportunity and access to the Real Estate to inspect and accept and further acknowledging that Vendor has made no representations respecting the Real Estate or Purchaser's acquisition of the Real Estate.

Buyer admitted the existence of the contract and the amendment and also admitted that he had failed to make the payments required. However, he alleged that hazardous waste on the property made Seller incapable of conveying merchantable title, constituting a failure of consideration. Buyer also asserted that this condition constituted a breach of Seller's warranty as to title. Buy-

er's amended counterclaim made similar allegations. Thereafter, Seller moved to dismiss the amended counterclaim for failure to state a claim under Indiana law and for judgment on the pleadings.

In April 1994, Magistrate Judge Rodovich granted Seller's motion for judgment on the pleadings and its motion to dismiss the amended counterclaim and set a date for trial on the issue of damages (Appellant's Br.App. 2–13). In this order, the magistrate judge held that Buyer failed to state a claim for breach of an implied warranty of habitability because Seller was not a builder-vendor, and under Indiana law such a claim is maintainable solely against builder-vendors. The magistrate judge also held that Buyer failed to show that Seller breached its warranty of title because Seller had disclaimed any implied warranty as to the condition of the property and because there was no authority for Buyer's contention that the presence of hazardous waste on the property could be construed as a lien or other encumbrance rendering the title unmerchantable. Subsequently the magistrate judge held that Seller was due the following (Buyer's Br.App. 18):

| | |
|---|---|
| Principal: | $356,258.70 |
| Accrued and Unpaid Interest Through September 26, 1994: | 171,602.06 |
| Advances for Real Estate Taxes: | 159,472.21 |
| TOTAL: | $687,332.97 |

The order further provided that the real estate should be sold for the benefit of Seller.

## II.

### Discussion

■ Buyer's position is that Seller breached some unspecified provision of the contract or an implied warranty by law in view of Seller's predecessor's alleged contamination of the property with hazardous waste.[2] Unfortunately for Buyer, the contract between the parties contains no express warranties as to the condition of the property and the following paragraph 4 of the Rider disclaims

---

**2.** Buyer also asserted that Seller's failure to disclose the contaminated state of the property was an independent tort entitling Buyer to recover punitive damages, but this argument has not been pursued on appeal.

any representations as to condition of the property:

> Notwithstanding anything contained to the contrary, Purchaser covenants and agrees that the purchase under the Contract shall be "AS IS" and Purchaser accepts the Real Estate and the improvements in an "AS IS, WHERE IS" condition, acknowledging that Purchaser has had adequate opportunity and access to the Real Estate to inspect and accept and further acknowledging that Vendor has made no representation respecting the Real Estate or Purchaser's acquisition of the Real Estate.

Buyer's pleadings allege no facts to avoid the enforcement of this provision.

■ Paragraph 6 of the rider to the contract states that the contract and rider shall be governed by Indiana law, and under Indiana law a contractual provision is unambiguous unless reasonably intelligent persons could honestly differ as to its meaning. *Canada Dry Corp. v. Nehi Beverage Co., Inc.*, 723 F.2d 512, 519 (7th Cir.1983).

The phrases "AS IS" and "AS IS, WHERE IS" used in the above rider are also used in Section 2–316(3)(a) of the Uniform Commercial Code to disclaim implied warranties with respect to transactions in goods, and there has been no showing here that such phrases do not disclaim implied warranties in real estate transactions.

As to express warranties, the phrase in the rider that "Vendor has made no representation respecting the Real Estate or Purchaser's acquisition of the Real Estate" shows that Seller's predecessor made no express warranties as to the condition of the property. Furthermore, the phrase in the rider that the buyer "has had adequate opportunity and access to the Real Estate to inspect and access and further acknowledging that Vendor has made no representations respecting the Real Estate or Purchaser's acquisition of the Real Estate" demonstrates that Seller was entitled to judgment. Accordingly, any implied warranties of condition were disclaimed. Purchaser's acquisition of the Real Estate demonstrates that Seller made no express warranties and any implied warranties of condition were disclaimed. Thus we conclude that Seller was entitled to judgment.

### A.

### Warranty of Merchantable Title

■ Buyer argues that the contaminated condition of the property amounted to a breach of Seller's warranty of merchantable title. However, Buyer has submitted no Indiana authority to show that condition of the property, including the presence of hazardous waste, constitutes a defect in ownership precluding Seller from conveying merchantable title.

Since Buyer has found no supporting Indiana authority, Buyer relies on *Jones v. Melrose Park Nat'l Bank*, 228 Ill.App.3d 249, 170 Ill.Dec. 126, 592 N.E.2d 562 (1st Dist. 1992). However, the seller in *Jones* gave the buyer an express warranty that it had received no notice of violations with respect to the real estate, whereas the seller knew there was a soil contamination problem and that an EPA penalty had been proposed before and after the contract was signed. Indeed the seller spent $100,000 in an attempt to remedy the problem. On these facts the *Jones* court held that the seller was precluded from tendering merchantable title. Here the Buyer alleges no facts which would make the *Jones* case applicable.

Moreover, it should be noted that Comment, *Toxic Clouds on Titles*, 19 B.C.Envtl.Aff.L.Rev. 355, 378–382 (1991), the only authority Buyer cites for its novel argument, acknowledges that every court that has addressed the issue has refused to expand the marketable title doctrine to make the presence of hazardous waste an encumbrance on title. Buyer's remedy would have been to include an environmental contingency clause in the contract or to insist on warranties against such conditions.[3]

---

3. In view of the authorities to the contrary, Buyer's briefs and oral argument do not appear to argue that the amended counterclaim states a cause of action in tort. At any rate, the argument would be futile. See *United States v. Allied Chem. Corp.*, 587 F.Supp. 1205 (N.D.Cal.1984); *Cameron v. Martin Marietta Corp.*, 729 F.Supp.

## B.

### No Warranty for Purchasers of Used Industrial Property

Because this is a diversity of citizenship case, substantive issues must be determined by Indiana law. *LaSalle Nat'l Bank v. Service Merchandise Co.*, 827 F.2d 74, 78 (7th Cir.1987). In addition, paragraph 6 of the rider to the contract provides that Indiana law governs the construction of the contract and the rider. *Mucha v. King*, 792 F.2d 602, 604 (7th Cir.1986). Here the Buyer would like to create new Indiana law adopting a non-disclaimable, implied-in-law warranty against hazardous waste contamination for purchasers of used industrial property. Indiana has already refused to extend implied-in-law warranty protection to purchasers of used homes. *Vetor v. Shockey*, 414 N.E.2d 575, 577 (Ind.Ct.App.1980). This makes it unlikely that the Indiana Supreme Court would create the kind of implied-in-law warranty that Buyer advocates. At any rate, in this case, Buyer has been unable to show that an Indiana court would make this warranty, which was disclaimed in paragraph 4 of the rider, non-disclaimable as a matter of law.

## III.

### Conclusion

This Court refuses to rewrite the contract in Buyer's favor. Therefore, the district court's judgment is affirmed.

1529 (E.D.N.C.1990); *In re Schenck Tours, Inc.*, 69 B.R. 906 (Bankr.E.D.N.Y.1987).