Rockingham
No. 94-513

LAWRENCE P. MCMANUS

v.

ROSEWOOD REALTY TRUST,
PATRICIA LARSON-KULAK, TRUSTEE

October 8, 1998

*Tober Law Offices, P.A.*, of Portsmouth (*Heidi E. Shealy* on the brief and orally), for the plaintiff.

*Coolidge Professional Association*, of Somersworth (*Brian R. Barrington* on the brief and orally), for the defendant.

MEMORANDUM OPINION

BROCK, C.J. The defendant, Rosewood Realty Trust, appeals the decision of the Superior Court (*Coffey*, J.) awarding the plaintiff, Lawrence P. McManus, an auctioneer's commission for his services in the auction of the defendant's property. We reverse and remand.

On September 23, 1987, the plaintiff conducted an auction of a piece of commercial property that the defendant owned in Rye. The buyer never closed on the property, however, because he discovered that the soil and ground water were contaminated with toxic substances.

The plaintiff sued the defendant to recover his auctioneer's commission, relying on section eight of the auction contract:

> The seller has good and clear title to all property to be sold . . . . The property will be sold free and clear of all liens (recorded, unrecorded) and encumbrances at closing. If the Seller cannot clear property by and before closing, the full commission will be due and owing.

The plaintiff maintained that because the property was contaminated with toxic waste, the defendant did not have "good and clear" title. The trial court agreed and awarded the plaintiff a $47,900 commission. This appeal followed.

On appeal, we uphold "the findings and rulings of the trial court unless they are lacking in evidential support or tainted by error of law." *Public Serv. Co. of N.H. v. Town of Bow*, 139 N.H. 105, 107, 649 A.2d 65, 66 (1994) (quotation omitted).

The issue before us is whether the presence of contaminants on the defendant's property destroyed "good and clear" title. "Good" title is synonymous with "marketable" title — one that is "free from any reasonable objection of a reasonable purchaser." *North Bay Council, Inc. v. Bruckner*, 131 N.H. 538, 544, 563 A.2d 428, 431 (1989) (quotation omitted). Even if property is contaminated with toxic substances, the title to that property may be "free from any reasonable objection of a reasonable purchaser." *Id.*; *see also* 14 R.

POWELL & P. ROHAN, POWELL ON REAL PROPERTY ¶ 881[6][e][v], at 81-179 to -180 (1996).

Here, the trial court failed to perceive the distinction between the condition of the title to the property and the condition of the property itself. There is a difference between

> economic lack of marketability, which relates to physical conditions affecting the use of the property, [and] title marketability, which relates to defects affecting legally recognized rights and incidents of ownership. One can hold perfect title to land that is valueless; one can have marketable title to land while the land itself is unmarketable.

*Chicago Title Ins. Co. v. Kumar*, 506 N.E.2d 154, 157 (Mass. App. Ct. 1987) (quotation omitted); *accord HM Holdings, Inc. v. Rankin*, 70 F.3d 933, 936 (7th Cir. 1995) (contaminated condition of property not breach of seller's warranty of merchantable title); *United States v. Allied Chemical Corp.*, 587 F. Supp. 1205, 1206 (N.D. Cal. 1984) ("term 'encumbrance' does not extend to the presence of hazardous substances" at the time of conveyance); *see also* Harbeson, Comment, *Toxic Clouds on Titles: Hazardous Waste and the Doctrine of Marketable Title*, 19 B.C. ENVTL. AFF. L. REV. 355, 356 (1991) (acknowledging refusal of courts to expand the marketable title doctrine to make the presence of hazardous waste an encumbrance on title). *But see Jones v. Melrose Park Nat. Bank*, 592 N.E.2d 562, 568 (Ill. App. Ct. 1992) (presence of hazardous waste renders title unmarketable).

That the State was authorized by statute to recover the cost of any cleanup of the contaminants that it might undertake does not alter our conclusion. *See* RSA 147-A:9, II (1996). A civil engineer with the State Department of Environmental Services testified that the State had no such plans. "The mere possibility or suspicion of a defect, which according to ordinary experience has no probable basis, does not demonstrate an unmarketable title." POWELL & ROHAN, *supra* ¶ 881[6][a], at 81-147 (quotation omitted); *see Chicago Title Ins. Co. v. Kumar*, 506 N.E.2d at 156-57.

■ The trial court erred in ruling that the defendant did not have "good and clear" title to the property. Because it awarded the commission to the plaintiff on this ground, it did not reach the plaintiff's alternative claim for damages for breach of the implied covenant of good faith and fair dealing. Consequently, we reverse and remand to the trial court for evaluation of this claim.

Additionally, we offer guidance to the trial court regarding an issue that may arise on remand. If the court is persuaded by the

plaintiff's remaining argument, it must award damages "to put the injured party as nearly as possible in the same position he would have been had the injury not occurred." *Phillips v. Verax Corp.*, 138 N.H. 240, 248, 637 A.2d 906, 912 (1994) (quotation omitted). If the lost commission is a proper measure of the plaintiff's damages, the trial court must determine "the actual understanding and intent of the parties" concerning the amount of that commission. *Tsiatsios v. Tsiatsios*, 140 N.H. 173, 178, 663 A.2d 1335, 1339 (1995).

*Reversed and remanded.*

BRODERICK, J., did not sit; BATCHELDER, J., sat by special assignment under RSA 490:3; HORTON, J., with whom THAYER, J., joined, dissented; the others concurred.

HORTON, J., dissenting: The majority correctly distinguishes between a defect in the property and a defect in the title when determining whether the title is good and marketable. Thus, unbuildable grade, ledge problems, bad drainage, and building construction problems are not, by themselves, clouds on title. The mere existence of hazardous wastes and hazardous materials on a given property does not create a defect in title. When the State imposes a lien on the property, however, and does so effectively, the defect in the property becomes a defect in title. I submit that this is the case before us and that the majority wrongly reverses the trial court's decision awarding contractual damages.

It is important to remember the contract term applicable to this case.

> The seller has good and clear title to all property to be sold
> . . . . The property will be sold free and clear of all liens
> (recorded, unrecorded) and encumbrances at closing. If the
> Seller cannot clear property by and before closing, the full
> commission will be due and owing.

Fairly read, this clause states that if the closing fails by virtue of the existence of a lien, recorded or unrecorded, on the subject property, the plaintiff will receive the full commission due. This is the parties' agreement, and we should honor it exactly. Thus, the only real issue before us is whether a lien exists on this property. It should also be noted that the majority's basis of decision — marketability of title — is also determined by the existence or non-existence of a lien.

The buyer aborted the closing after his due diligence inspection of the property revealed pollution. Unfortunately, the record does not

permit us to determine the existence or non-existence of a lien. There is, however, a substantial risk that a lien does exist that would trigger the contractual provision and create a defect in title, or, at the minimum, an encumbrance on the title.

RSA 147-B:10-b, I (Supp. 1997) provides:

> The department [of environmental services] *shall have a lien* upon the business revenues and all real and personal property of any person subject to liability under RSA 147-B:10, I for all costs recoverable by the state pursuant to RSA 147-B:10, II.

(Emphasis added.)

In order for the lien to be "valid and effective" it must be recorded in the registry of deeds. RSA 147-B:10-b, II (Supp. 1997). It is clear that no lien has been recorded in the case before us. Thus, we must determine whether an unrecorded, inchoate lien exists. RSA 147-B:10-b, II creates a super priority for the lien (other than on residential property) when the lien is recorded. Since the lien is granted priority over all encumbrances existing at the time of recording and thereafter, it arises at the time of pollution by hazardous waste or hazardous materials. Recording serves only to perfect the lien. The legislature has adopted this lien structure in other circumstances. *See* RSA ch. 447 (1991 & Supp. 1997).

Having found that a lien exists, we must determine whether the lien is applicable to this property in the hands of this buyer. First, is the property in question a "facility?" RSA 147-B:2, III. The answer depends on whether the pollution is "hazardous waste or hazardous materials." RSA 147-B:2, VII, VIII. If the property is a "facility," the property would be burdened with a lien. By buying the property, the defendant would be strictly liable under RSA 147-B:10. Having discovered the pollution prior to purchase, the buyer gains no protection from RSA 147-B:10-a, II.

I cannot believe that we would deny the buyer the right to avoid his obligation to purchase under the facts of this case, if a lien exists. The majority remands for consideration of plaintiff's claim of damages based on violation of good faith and fair dealing. I would remand to the trial court on a completely different basis. I would ask the trial court to determine whether the subject property's acknowledged pollution created a statutory lien on the property that existed at the time of closing, and whether the defendant would then have

become strictly liable. If both determinations are in the affirmative, the trial court's judgment for the plaintiff is appropriate.

THAYER, J., joins in the dissent.