Deborah M. WALTON, Appellant,

v.

FIRST AMERICAN TITLE
INSURANCE COMPANY,
Appellee.

No. 49A02–0506–CV–583.

Court of Appeals of Indiana.

March 20, 2006.

John F. McCauley, Julianna M. Plawecki, McTurnan & Turner, Indianapolis, for Appellant.

Mark R. Galliher, Craig D. Doyle, Joanne B. Friedmeyer, James L. Shoemaker, Doyle & Friedmeyer, P.C., Indianapolis, for Appellee.

**OPINION**

RILEY, Judge.

## STATEMENT OF THE CASE

Appellant–Plaintiff, Deborah M. Walton (Walton), appeals the trial court's grant of summary judgment in favor of Appellees–Defendants, First American Title Insurance Company (First American), with regard to Walton's claim that First American breached its duty to defend.

We affirm.

## ISSUE

Walton raises one issue on appeal, which we restate as follows: whether the trial court erred as a matter of law in denying Walton's motion for summary judgment which alleged that First American breached its duty to defend under a title insurance policy.

1. Schedule C provides:
   Lot 107 in Springmill Streams Section Six, an addition in Hamilton County, Indiana as per plat thereof, recorded as Instrument No. 87–46555 on November 5, 1987, in the Office of the Recorder of Hamilton County, Indiana.

## FACTS AND PROCEDURAL HISTORY

On January 10, 2000, Walton purchased property in a residential subdivision at 12878 Mayfair Lane in Hamilton County, Indiana. The property consists of two deeded parcels of land: (1) Lot 107, located in the subdivision commonly known as Springmill Streams, and (2) Parcel A, located in the subdivision of Claybridge. In combination with her purchase of the residence, Walton acquired a title insurance policy from First American which promised coverage in the event that, "[s]omeone else owns an interest in your title," "[t]here are restrictive covenants limiting your use of the land" or "[s]omeone else has an easement on your land." (Appellant's App. p. 25). The policy also promised to defend Walton's title against any claims based on one of the covered risks. However, the title policy contains specific exceptions to these covered risks, including, in pertinent part:

10. Covenants, conditions, restrictions, setback lines, utility easements and any amendments thereto contained in the plat of the subdivision described in Schedule C.[1] . . .

11. Declaration of covenants, conditions, and restrictions and any amendments thereto of Springmill Streams, recorded April 16, 1981 in Deed Record 325, pages 590–610 and last amended by Fourth Amendment to Declaration recorded April 19, 1991 as Instrument no. 91–8849. The Declaration provides for regular and special assessments which shall constitute a lien upon the land. The Declaration also

TOGETHER WITH: Parcel A in Claybridge at Springmill an addition in Hamilton County, Indiana, as per plat thereof recorded in Plat Cabinet 1, Slide No. 72, as Instrument No. 89–27503 in the Office of the Recorder of Hamilton County, Indiana.
(Appellant's App. p. 34).

provides that the lien of any assessment shall be subordinate to the lien of any first mortgage. A violation of the covenants, conditions, and restrictions will not result in forfeiture or reversion of title. We delete any covenant, condition or restriction indicating a preference, limitation or discrimination based on race, color, religion, sex, handicap, familial status, or national origin to the extent such covenants, conditions or restrictions violate 42 USC 3604(c). *as referred to as Lot 107 in Springmill Streams Section Six.*

.      .      .      .      .

13. Declaration of covenants, conditions, and restrictions and any amendments thereto of Claybridge at Springmill, recorded November 29, 1989 as Instrument no. 89–27000. The Declaration provides for regular and special assessments which shall constitute a lien upon the land. The Declaration also provides that the lien of any assessment shall be subordinate to the lien of any first mortgage. A violation of the covenants, conditions, and restrictions will not result in forfeiture or reversion of title. We delete any covenant, condition or restriction indicating a preference, limitation or discrimination based on race, color, religion, sex, handicap, familial status, or national origin to the extent such covenants, conditions or restrictions violate 42 USC 3604(c). *as referred to as Parcel A in Claybridge at Springmill.*

(Appellant's App. p. 33—italicized language added after issuance of policy, *see infra*)

In June of 2001, a dispute arose over whether the Claybridge Homeowners Association (Claybridge HOA) had an easement on Lot 107, Walton's property located in Springmill Streams. Walton informed the Claybridge HOA that their Declaration of Covenants and Restrictions (Claybridge DCR) only applied to Parcel A, which was located in the Claybridge subdivision, and not to Lot 107. Attempting to clarify the proper enforcement of the easements on her property, Walton returned to First American. In response, First American wrote into the policy the phrase "as referred to as Lot 107 in Springmill Streams Section Six" at the end of exception 11 and the phrase "as referred to in Parcel A in Claybridge at Springmill" at the end of exception 13.

On October 15, 2001, Claybridge HOA filed a Complaint against Walton seeking injunctions allowing Claybridge HOA a right to use and maintain easements on Lot 107 and Parcel A. In October of 2001, Walton informed First American that she had been sued by Claybridge HOA and submitted a claim for defense against the suit under the policy. On June 28, 2002, the trial court entered a permanent injunction against Walton, finding that the Claybridge DCR applied to both Lot 107 and Parcel A. We affirmed the trial court's decision in a memorandum decision of July 15, 2003. On July 28, 2003, after the court of appeals decision was handed down, First American informed Walton in writing that her claim under the policy was denied.

Thereafter, on October 2, 2003, Walton filed a Complaint against First American alleging that the company had breached the title insurance policy she had purchased by refusing to defend her in a lawsuit over a homeowner's association's claimed right to use and maintain certain easements on her property and by denying coverage of that claim. On September 16, 2004, Walton filed a motion for summary

judgment. On June 6, 2005, after a hearing, the trial court entered summary judgment in favor of First American.

Walton now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

Walton contends that the trial court erred as a matter of law by denying Walton's motion for summary judgment for First American's breach of duty to defend and refusal to provide coverage pursuant to the terms of the title insurance policy.

### I. Standard of Review

Summary judgment is appropriate only when there are no genuine issues of material fact and the moving party is entitled to a judgment as a matter of law. Ind. Trial Rule 56(C). In reviewing a trial court's ruling on summary judgment, this court stands in the shoes of the trial court, applying the same standards in deciding whether to affirm or reverse summary judgment. *American Family Mut. Ins. Co. v. Hall*, 764 N.E.2d 780, 783 (Ind.Ct. App.2002), *trans. denied.* Thus, on appeal, we must determine whether there is a genuine issue of material fact and whether the trial court has correctly applied the law. *Id.* In doing so, we consider all of the designated evidence in the light most favorable to the non-moving party. *Id.*

Insurance contracts are subject to the same rules of construction as are other contracts. *Jackson v. Jones*, 804 N.E.2d 155, 158 (Ind.Ct.App.2004). Generally, the construction of a written contract is a question of law for the trial court for which summary judgment is particularly appropriate. *Mid State Bank v. 84 Lumber Co.*, 629 N.E.2d 909, 914 (Ind.Ct.App.1994). However, if the terms of a written contract are ambiguous, it is the responsibility of the trier-of-fact to ascertain the facts necessary to construe the contract. *Id.* Con-

sequently, when summary judgment is granted based upon the construction of a written contract, the trial court has either determined as a matter of law that the contract is not ambiguous or uncertain, or that the contract ambiguity, if one exists, can be resolved without the aid of a factual determination. *Id.*

### II. Duty to Defend

Walton now maintains that First American breached its duty to defend because the suit, as instituted by the Claybridge HOA, was not excluded from coverage under the plain meaning of the title insurance policy. An insurance company's duty to defend is broader than its duty to indemnify. *Employers Ins. of Wausau v. Recticel Foam Corp.*, 716 N.E.2d 1015, 1028, n. 6 (Ind.Ct.App.1999), *trans. denied.* The law in this jurisdiction is well settled that where an insurer's independent investigation of the facts underlying a complaint against its insured reveals a claim patently outside of the risks covered by the policy, the insurer may properly refuse to defend. *Liberty Mutual Ins. Co. v. Metzler*, 586 N.E.2d 897, 901 (Ind.Ct.App.1992). However, an insurer refusing to defend must protect its interest by either filing a declaratory judgment action for a judicial determination of its obligations under the policy or hire independent counsel and defend its insured under a reservation of rights. *Id.* at 902. As we have indicated, "[an insurer] can refuse to defend or clarify its obligation by means of a declaratory judgment action. If it refuses to defend it does so at its peril . . ." *Id.* (citing *Cincinnati Ins. Co. v. Mallon*, 409 N.E.2d 1100, 1105 (Ind.Ct.App.1980)).

Here, First American did not protect its interest by filing a declaratory judgment action nor did it defend Walton under a reservation of rights. Accordingly, we need to review whether First Amer-

ican now suffers the peril of its unilateral decision not to defend Walton in her suit against the Claybridge HOA. We determine the insurer's duty to defend from the allegations contained within the complaint and from those facts known or ascertainable by the insurer after reasonable investigation. *Liberty Mut. Ins. Co. v. OSI Industries, Inc.* 831 N.E.2d 192, 198 (Ind. Ct.App.2005), *trans. denied.* If the pleadings reveal that a claim is clearly excluded under the policy, then no defense is required. *Id.*

■ When purchasing her residence, Walton acquired a title insurance policy from First American which promised coverage in the event that, "[s]omeone else owns an interest in your title," "[t]here are restrictive covenants limiting your use of the land" or "[s]omeone else has an easement on your land." (Appellant's App. p. 25). The policy also promised to defend Walton's title against any claims based on one of the covered risks. However, as we stated above, the title policy contains specific exceptions to these covered risks, including, in pertinent part:

10. Covenants, conditions, restrictions, setback lines, utility easements and any amendments thereto contained in the plat of the subdivision described in Schedule C....

11. Declaration of covenants, conditions, and restrictions and any amendments thereto of Springmill Streams, recorded April 16, 1981 in Deed Record 325, pages 590–610 and last amended by Fourth Amendment to Declaration recorded April 19, 1991 as Instrument no. 91–8849. The Declaration provides for regular and special assessments which shall constitute a lien upon the land. The Declaration also provides that the lien of any assessment shall be subordinate to the lien of any first mortgage. A viola-

tion of the covenants, conditions, and restrictions will not result in forfeiture or reversion of title. We delete any covenant, condition or restriction indicating a preference, limitation or discrimination based on race, color, religion, sex, handicap, familial status, or national origin to the extent such covenants, conditions or restrictions violate 42 USC 3604(c). *as referred to as Lot 107 in Springmill Streams Section Six.*

. . . . .

13. Declaration of covenants, conditions, and restrictions and any amendments thereto of Claybridge at Springmill, recorded November 29, 1989 as Instrument no. 89–27000. The Declaration provides for regular and special assessments which shall constitute a lien upon the land. The Declaration also provides that the lien of any assessment shall be subordinate to the lien of any first mortgage. A violation of the covenants, conditions, and restrictions will not result in forfeiture or reversion of title. We delete any covenant, condition or restriction indicating a preference, limitation or discrimination based on race, color, religion, sex, handicap, familial status, or national origin to the extent such covenants, conditions or restrictions violate 42 USC 3604(c). *as referred to as Parcel A in Claybridge at Springmill.*

(Appellant's App. p. 33)

The designated evidence reflects that Claybridge HOA's Complaint filed against Walton sought injunctions allowing Claybridge HOA a right to use and maintain easements on both Lot 107 and Parcel A, and alleged in pertinent part that:

4. A Declaration of Covenants and Restrictions (hereinafter DCR) governs the

rights, duties, restrictions and relationship between [the Claybridge HOA] and [Walton] and is attached as Exhibit C.

.    .    .    .    .

8. Pursuant to the DCR, Article 15, all lots are subject to drainage easements, sewer easements, utility easements, entry way easements, and landscaping easements. All easements include the right of reasonable ingress and egress for the exercise of other rights reserved.

9. Pursuant to the DCR, Article 7, [Claybridge HOA] has a duty to maintain the Entry Ways and the Landscape Easements, also known as Planting Easements, and all improvements and plantings thereon.

10. Pursuant to the DCR, Article 10, [Claybridge HOA] has a right to erect, maintain, and replace fences on or within any landscape easement on an Owner's lot.

11. Under the First Amendment to the DCR, [Claybridge HOA] has the duty to maintain all street signs located in Claybridge.

.    .    .    .    .

23. Under the DCR, [Claybridge HOA] has the legal right and obligation to maintain the street signs and fence in the right of way and easement areas adjacent to and on [Walton's] property.

(Appellant's App. pp. 43–44, 46).

Hence, it is undisputed that Claybridge HOA based its claim against Walton on the enforceability of the rights and duties comprised within the terms of the DCR. The sole exceptions listed in the title policy applicable to the DCR, are exceptions 11 and 13. The plain meaning of the language added by First American to these general exceptions, clarifying them to Walton's particular case, reveals that exception 11 also applies to Lot 107, located in Springmill Streams, while exception 13 also applies to Parcel A, located in Claybridge. Accordingly, we agree with Walton that, at first glance, the added language clarifies that the title insurance policy excludes from coverage the application of the Springmill Streams DCR to the property located in Springmill Streams and the application of the Claybridge DCR to the property located in Claybridge. In fact, neither of these exceptions specifically address or exclude the claims made by the Claybridge HOA, namely, claims based on the application of the Claybridge DCR to the property located in Springmill Streams. Accordingly, under the plain meaning of the policy, Claybridge HOA's claim that the Claybridge DCR applies to Lot 107 in Springmill Streams is a covered title risk that is not specifically excluded under the policy.

However, our inquiry does not end here: we also need to take into account the facts known or ascertainable by the insurer after reasonable investigation. *See Liberty Mut. Ins. Co.*, 831 N.E.2d at 198. Here, it is clear that First American was aware of the Claybridge DCR and Springmill Streams DCR prior to executing the title insurance policy with Walton. Our review of the DCRs reveals that Brenwick Development Company (Brenwick), the real estate developer of Springmill Streams and Claybridge, specifically reserved the right to amend the covenants and restrictions contained in the Springmill Streams DCR.

Subsequent to recording the Springmill Streams DCR, Brenwick recorded the Claybridge DCR. Pursuant to the Claybridge DCR, Lot 107, even though located in Springmill Streams, is subject to the rights and obligations included within the Claybridge DCR. Under its terms, the Claybridge HOA is required to maintain the entry ways and the landscaping easements and all improvements and plantings thereon. By its amendment of April 19, 1991, the DCR clearly specifies that Lot 107 is not subject to assessments for any

of the maintenance obligations associated with certain Claybridge amenities. Thus, by subjecting Lot 107 to the Claybridge DCR, Brenwick both modified the restrictions it had placed on that lot under the Springmill Streams DCR and added additional restrictions.

Moreover, in the Springmill DCR, Brenwick specifically reserved the right to amend those restrictions so long as the amendment did not restrict or diminish the rights of the lot owners in Springmill Streams. Prior to recording the Claybridge DCR, the Springmill Streams HOA was obligated to maintain the entryway and planting easements on Lot 107. The Claybridge DCR assigned that responsibility to the Claybridge HOA thus lessening the Springmill Streams HOA's burden to maintain those easements. Therefore, the Claybridge DCR effectively amended the Springmill DCR as it applies to Lot 107.

Accordingly, based on its independent investigation of the known and ascertainable facts regarding Walton's property, First American correctly concluded that Lot 107 was subject to the rights and obligations enacted in the Claybridge DCR, thereby bringing it squarely within the coverage exceptions of the title insurance policy. Consequently, we find that First American properly refused to defend Walton's suit against the Claybridge HOA.

### CONCLUSION

Based on the foregoing, we conclude that the trial court properly granted summary judgment as a matter of law in favor of First American.

Affirmed.

SHARPNACK, J., and BARNES, J., concur.