**Wayne HOUSE, Appellant–Plaintiff,**

v.

**FIRST AMERICAN TITLE COMPANY, Appellee–Defendant.**

No. 15A05–0605–CV–232.

Court of Appeals of Indiana.

Dec. 8, 2006.

---

Douglas C. Holland, Lawrenceburg, IN, Attorney for Appellant.

Frank G. Kramer, Patricia J. Coghill, Ewbank, Kramer & Dornette, Lawrenceburg, IN, Attorneys for Appellee.

## OPINION

ROBB, Judge.

### Case Summary and Issue

Wayne House appeals from the trial court's order granting summary judgment in favor of First American Title Company ("First American") in an action brought by House, alleging fraud and violation of the Unfair Claims Settlement Practice statute. House contends that he is entitled to summary judgment, and argues that the trial court incorrectly held that an injunction against using a common septic system situated on property purchased by House is not covered by the title insurance policy issued to him by First American. Concluding that the injunction did not constitute a defect in or lien or encumbrance on House's title to the property, and did not affect the marketability of such title, we affirm the trial court's grant of summary judgment in favor of First American.

### Facts and Procedural History

The undisputed facts outlined by the trial court are as follows:

4. The property [in Dearborn County] ... had been owned by Devon Short and Betty Short ... as joint tenants with rights of survivorship for which the Shorts had given a mortgage ... which was thereafter assigned to the Bank of New York, Trustee ... on September 4, 1999[,] and recorded on June 15, 2000.

5. After the assignment of the mortgage, the Shorts became delinquent on their payments and the Bank of New York filed a Complaint on Note and To Foreclose Mortgage against the Shorts in the Dearborn Circuit Court ...

6. While the foreclosure action was pending, the Dearborn County Health Department filed a Complaint requesting injunctive relief and damages against the Shorts on July 24, 2002[,] for [a] violation ... involving the use of a common septic tank and field utilized by the property owned by the Shorts and a neighboring property.

7. The Dearborn County Health Department did not name the Bank of New York as a party defendant in its case for injunctive relief and damages, nor did it intervene in the action for foreclosure filed by the Bank of New York against the Shorts.

8. The Bank of New York proceeded with its action to foreclose and on June 19, 2003, Judgment of Foreclosure was entered in the Dearborn Circuit Court against the Shorts declaring the lien of the Bank of New York superior and all other interests junior and subordinate and ordering the real estate ... to be sold at Sheriff's sale.

9. Pending the sale of the real estate at Sheriff Sale, the Dearborn County Health Department obtained a Default Judgment against Devon Short on August 13, 2003[,] enjoining further use of the septic system ..., and continued the hearing on damages to a later date.

10. On September 18, 2003[,] the Bank of New York was issued a Sheriff's

Deed for the subject real estate having previously purchased the property at [S]heriff's [S]ale.

11. On January 30, 2004[,] an Offer to Purchase was executed by Bank of New York and Wayne House for the sum of $25,000.00. First American issued a policy of title insurance dated April 1, 2004, insuring fee simple title to the real estate.

12. Bank of New York executed a Special Warranty Deed to House recorded April 1, 2004.

13. Written notification of the violation was forwarded to House by letter dated August 10, 2004[,] from Richard Butler, Attorney for the Dearborn County Health Department.

Appellant's Appendix at 6–9 (citations to Defendant's Designations of Evidence omitted).[1]

House purchased the property "for rehab and resale," Appellant's Brief at 1, subject to provisions that the property's condition was sold "AS–IS" and "AS–SEEN." Appellee's Appendix at 57, 59. A special warranty deed conveyed the property "[s]ubject to any and all easements, agreements and restrictions of record." Appellant's App. at 28. In affidavits, Douglas Baer, the enforcement officer of the Dearborn County Health Department, explained that after issuance of the injunction the owner of the neighboring property "tapped into the available municipal sewer thereby diverting its sewage from the common septic tank and field to the municipal sewer system." Appellee's App. at 60. House was required to verify that the septic system functioned properly. Appellant's App. at 33. A test conducted by the Dearborn County Health Department confirmed that the septic system functioned properly, and the injunction

filed against Short was lifted. Baer also explained that "[i]f Wayne House had not verified proper functioning of the septic problem to the satisfaction of the Health Department, we would have pursued legal recourse if he would have violated the injunction." Appellant's App. at 33. House asserts that he worked for seven months to correct problems with the septic system in order for the injunction to be lifted.

House presented a claim for losses and damages to First American, who denied it. On October 27, 2004, House filed a complaint based on First American's refusal to provide coverage under the terms of the title insurance policy, alleging that he was "wrongfully, intentionally, and fraudulently denied his rightful claim" and that First American violated the Unfair Claim Settlement Practice statute. *Id.* at 17–18. He sought treble damages resulting from his expense in lifting the injunction against Short. First American denied the allegations, and asserted defenses including that House purchased the property "as is" and that the foreclosure action, filed prior to the Dearborn County Health Department's action, precluded any attachment of an interest derived from the default judgment enjoining Short's use of the septic system. After a hearing, the trial court granted First American's summary judgment motion and denied House's summary judgment motion. House filed a motion to correct error, which was also denied. He now appeals the grant of summary judgment in favor of First American.

*Discussion and Decision*

I. Standard of Review

Summary judgment is appropriate only when there are no genuine issues of material fact, and the moving party is entitled

---

1. The Appellant's Brief does not comply with Indiana Appellate Rule 46(A)(10), which requires the judgment or order being appealed to be included with the brief. Counsel is admonished to fulfill this requirement in the future.

to a judgment as a matter of law. Ind. Trial Rule 56(C). The reviewing court is in the same position and applies the same standards as the trial court when deciding whether to affirm or reverse summary judgment. *Walton v. First American Title Ins. Co.*, 844 N.E.2d 143, 146 (Ind.Ct. App.2006). We must determine whether there is a genuine issue of material fact, and whether the trial court has correctly applied the law. *Id.* In doing so, we consider all of the designated evidence in the light most favorable to the non-moving party. *Id.* Insurance contracts are subject to the same rules of construction as are other contracts, which is generally a question of law for the trial court for which summary judgment is particularly appropriate. *Id.*

The party appealing a denial of summary judgment has the burden of persuading this court that the trial court's ruling was improper. *Sims v. Town of New Chicago*, 842 N.E.2d 830, 833 (Ind.Ct.App. 2006). We are not bound by the trial court's specific findings and conclusions, which merely aid our review by providing a statement of reasons for the trial court's actions. *Bd. of Comm'rs of LaPorte County v. Town & Country Utils., Inc.*, 791 N.E.2d 249, 252 (Ind.Ct.App.2003), *trans. denied.* Even so, the trial court's grant of summary judgment is clothed with a presumption of validity. *Sims,* 842 N.E.2d at 833. "The fact that the parties made cross-motions for summary judgment does not alter our standard of review. Instead, we must consider each motion separately to determine whether the moving party is entitled to judgment as a matter of law." *Pond v. McNellis,* 845 N.E.2d 1043, 1053 (Ind.Ct.App.2006), *trans. denied* (citations omitted).

## II. Title Insurance Coverage

Subject to exclusions, the relevant portions of the title insurance policy provided by First American cover against loss or damage sustained or incurred by reason of "[a]ny defect in or lien or encumbrance on the title," and "[u]nmarketability of the title." Appellant's App. at 19. The dispositive issue before us is whether, as a matter of law, the scope of House's title insurance coverage includes an injunction issued against the property's prior owner. The title insurance policy did not list or exclude the default judgment in favor of the Dearborn County Health Department.

"The purpose of title insurance is to insure that title to the property is vested in the named insured, subject to the exceptions and exclusions stated in the policy." *Linder v. Ticor Title Ins. Co. of Cal., Inc.*, 647 N.E.2d 37, 40 (Ind.Ct.App. 1995). Generally, a provider of title insurance is required to search a property's chain of title in order to discover whether there exists any cloud upon the interest transferred. *See Bank of N.Y. v. Nally,* 820 N.E.2d 644, 650 (Ind.2005) (describing how, in a title search, a prospective purchaser relies upon the chain of title). There appears to be no dispute that House has title to a fee simple interest in the property. Nevertheless, House argues that "[t]he fact [he] had a fee simple title has no legal significance to the issues in this case" because the injunction is a "defect to this fee simple deed." Appellant's Br. at 18. House contends that the "[i]njunction on the use of the septic system by any person is a defect of House's ownership, property marketability, and has a significant adverse effect on the value of the property." *Id.* at 7 (internal quotations omitted).

The question before us, then, is whether the injunction affects the clarity or marketability of House's title to the property under the terms of his title insurance policy. In order for a grant of summary judgment favoring House to be appropriate, the injunction must fall under either or both of the policy's relevant provisions

as a matter of law. Likewise, a grant of summary judgment favoring First American is appropriate only if the injunction does not come within the scope of coverage provided to House.

### A. Defect In or Lien or Encumbrance On the Title

House's argument that the injunction on the use of the septic system by any person is a defect of House's ownership relies on Indiana Code section 32–21–5–4, which provides that a defect is

> a condition that would have a significant adverse effect on the value of the property, that would significantly impair the health or safety of future occupants of the property, or that if not repaired, removed, or replaced would significantly shorten or adversely affect the expected normal life of the premises.

House's reliance on this provision is misplaced. The section to which he cites also specifies that its definition of defect pertains to residential real estate disclosure forms, not title insurance policies. Moreover, Indiana Code section 32–21–5–1(b)(2) precludes application of the entire chapter from "[t]ransfers by a mortgagee who has acquired the real estate at a sale conducted under a foreclosure decree or who has acquired the real estate by a deed in lieu of foreclosure." Because Bank of New York purchased the property at a foreclosure sale pursuant to a foreclosure decree, the definition of defect propounded by House is inapplicable.

A defect in title is anything rendering that title defective, and defective title is "[a] title that cannot legally convey the property to which it applies, [usually] because of some conflicting claim to that title." Black's Law Dictionary 1493 (7th ed.1999). With regard to the effect of the injunction upon House's title, the trial court held:

> Because the judgment of the Dearborn County Health Department did not attach until after the foreclosure action was commenced by the Bank of New York, any lien which arose as a result of the Default Judgment obtained by the Health Department was foreclosed by the foreclosure sale and therefore does not affect fee simple title to the real estate.

Appellant's App. at 9 (citation omitted). We agree.

■ As noted by the trial court, the filing of a foreclosure action by Bank of New York on October 31, 2001, was constructive notice to anyone acquiring an interest in the property after commencement of the action. *Mid–West Fed. Sav. Bank v. Kerlin*, 672 N.E.2d 82, 87 (Ind.Ct. App.1996), *trans. denied* ("[C]ommencement of the foreclosure action itself provides constructive notice to pendent lite claimants."). The Dearborn County Health Department's action against the property's prior owner commenced July 24, 2002, well after the foreclosure action's filing date, which is "the only relevant date used to determine the proper parties to a mortgage foreclosure." *Id.* at 86. Therefore, the Dearborn County Health Department was not a proper party to the foreclosure action, and was required to intervene in it to pursue or protect any claimed interest in the property. It did not do so. In addition, the Dearborn County Health Department's action for injunction did not name Bank of New York as a party, instead naming only Devon Short.[2]

Consequently, Bank of New York acquired fee simple ownership of the property at the sheriff's sale, and was issued a deed. Bank of New York then conveyed the property to House in fee simple

---

**2.** House correctly points out that the default

judgment enjoins "Defendant [Short] *and any*

through a special warranty deed, including a provision indicating that Bank of New York was "seized and possessed of said land and has a right to convey it, and warrants title against the lawful claims of all persons claiming by, through, and under it, but not further otherwise." Appellant's App. at 28. Therefore, we agree with the trial court that the default judgment against Short did not affect House's fee simple title to the property because of the manner in which it was obtained by the Dearborn County Health Department after the judgment of foreclosure favoring Bank of New York. Thus, there exists no defect in the title such as a conflicting claim that would have precluded legal conveyance of the property from Bank of New York to House.

### B. Unmarketability of Title

House also argues that the injunction against using the septic system and field affected the property's marketability, and had a significant effect on the property's value. This contention implicates the title insurance policy's coverage of unmarketability of the title. We have previously stated that "title 'which has no defects of a serious nature, and none which affect the possessory title of the owner, ought to be adjudged marketable.'" *Staley v. Stephens*, 404 N.E.2d 633, 635 (Ind.Ct.App. 1980) (quoting *Kenefick v. Shumaker*, 64 Ind.App. 552, 565, 116 N.E. 319, 323 (1917)). We have also noted that this traditional formulation of marketable title also includes that "a purchaser will 'not

[be] bound to accept a doubtful title, or one that would likely be involved in litigation,'" qualifying this to mean not any litigation, but rather only litigation "arising out of problems of unclear title." *Humphries v. Ables*, 789 N.E.2d 1025, 1033 (Ind.Ct.App.2003) (quoting *Staley*, 404 N.E.2d at 635).

■ In *Humphries*, we considered whether potential soil contamination rendered title to a property unmarketable. Specifically, the buyers argued against specific performance of an agreement to purchase property formerly occupied by a gas station. They believed marketable title as guaranteed by contract could not be obtained without a property inspection revealing no contamination. Focusing our analysis on "issues that affect the possessory title of the owner," we held that marketable title could be transferred even if the property to be conveyed was contaminated because, "[w]hile the presence or likelihood of contamination may affect the market value of the property, it does not affect title to the property." *Id.* at 1033–34.

Our holding in *Humphries* is instructive in the present case. As there, we presently concern ourselves only with matters affecting House's possessory title in the property, covered by his title insurance policy. This policy is meant to protect House in the event that he "may not get the full use of the property because of someone else's claim to it" rather than

*other person* from using the residential sewage disposal system." Appellant's App. at 26 (emphasis added). However, Short is the only named party, and judgment is entered specifically against only Short. Thus, House's argument that the injunction is enforceable against him as a successive owner is not persuasive. Indeed, Indiana Trial Rule 65(D), dealing with the scope of injunctions, sets forth that orders are "binding only upon the parties to the action, ... and upon those persons in active concert or participation

with them who receive actual notice of the order by personal service or otherwise." It has not been argued or established that House falls within this category of persons with regard to Short. Likewise, although a complete title search may include records from the office of a county's clerk of courts, *WorldCom Network Services, Inc. v. Thompson*, 698 N.E.2d 1233, 1241 (Ind.Ct.App.1998), *trans. denied*, it has not been established that the injunction order was within the chain of title sufficient to provide the requisite notice.

from the fact that "the value of [his] newly acquired property is less than hoped for." *Id.* at 1034. Like the contamination in *Humphries,* the order of injunction may have affected the property's market value, but never affected House's title.[3] Moreover, any potential future litigation House may have encountered would have arisen from the Dearborn County Health Department's enforcement of the injunction, rather than from problems of unclear title. As a result, we cannot conclude that First American acted wrongly or fraudulently in denying House's claim based on unmarketability of title.

### Conclusion

Only title was insured under House's policy with First American, not the condition of the property to which House held title. As such, First American did not wrongly or fraudulently deny House's claim for damages based on the injunction issued against the property's prior owner. We therefore affirm the trial court's grant of summary judgment favoring First American.

Affirmed.

SULLIVAN, J., and BARNES, J., concur.

---

**3.** Especially persuasive is our reference in *Humphries* to analysis performed by the New Hampshire Supreme Court, which stated:

> There is a difference between economic lack of marketability, which relates to physical conditions affecting the use of property, [and] title marketability, which relates to defects affecting legally recognized rights and incidents of ownership. One can hold perfect title to land that is valueless; one can have marketable title to land while the land itself is unmarketable.

*Id.* at 1032 (quoting *McManus v. Rosewood Realty Trust,* 143 N.H. 78, 719 A.2d 600

(1998)). House's title to the property is clear, although the condition of that property—including the septic system—was purchased as-is. It is for this reason that House's argument that the trial court improperly granted summary judgment in favor of First American based on highly disputed facts is unpersuasive. The degree to which House was required by the Dearborn County Health Department to expend time, effort, and money to resolve the septic system problem in no way calls into question whether he held clear title to a fee simple interest in the property.